Albert N. Kennedy, OSB No. 821429 (Lead Attorney)
    Direct Dial: 503.802.2013
    Facsimile:   503.972.3713
    E-Mail:      albert.kennedy@tonkon.com
Timothy J. Conway, OSB No. 851752
    Direct Dial: (503) 802-2027
    Facsimile:   (503) 972-3727
    E-Mail:      tim.conway@tonkon.com
Michael W. Fletcher, OSB No. 010448
    Direct Dial: (503) 802-2169
    Facsimile:   (503) 972-3867
    E-Mail:      michael.fletcher@tonkon.com
Ava L. Schoen, OSB No. 044072
    Direct Dial: (503) 802-2143
    Facsimile:   (503) 972-3843
    E-Mail:      ava.schoen@tonkon.com
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204-2099

    Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| In re | Case No. 19-62584-pcm11 |
|---|---|
| NORPAC Foods, Inc., Hermiston Foods, LLC, and Quincy Foods, LLC, | **LEAD CASE** |
| Debtors. | (Jointly Administered with Case Nos. 19-33102-pcm11 and 19-33103-pcm11) |
| | **DEBTORS' REPORT REGARDING FINAL ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT** |

A final hearing on Debtors' Motion to Obtain Secured Credit on Interim and Final Basis [Case No. 19-62584-pcm11, ECF No. 21; Case No. 19-33102-pcm11, ECF No. 21; Case No. 19-33103-pcm11, ECF No. 21] (the "Motion") is set for September 10, 2019 at 1:30 p.m. The Debtors, CoBank, ACB ("CoBank"), the Unsecured Creditors Committee ("Committee") and

Page 1 of 2 -    DEBTORS' REPORT REGARDING FINAL ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT

1  numerous other creditors and parties in interest have been actively working on the terms of a

2  Final Order Granting Debtors' Motion ("Final Order").

3      The parties have not yet reached agreement on all the terms of a Final Order.  However,

4  attached hereto as Exhibit 1 is a redlined copy of the proposed Final Order showing the changes

5  that have been agreed upon at this time.  The attached is a redline from the interim order entered

6  by the Court at ECF No. 43.  Discussions are ongoing and there may be further agreed provisions

7  by the time of the hearing.  However, it is not expected that the parties will reach a resolution on

8  all issues.

9      DATED this 9th day of September, 2019.

10                     TONKON TORP LLP

11

12          By /s/ Timothy J. Conway
             Albert N. Kennedy, OSB NO. 821429
13           Timothy J. Conway, OSB No. 851752
             Michael W. Fletcher, OSB No. 010448
14           Ava L. Schoen, OSB No. 044072
             Attorneys for Debtors

15

16

17

18

19

20

21

22

23

24

25

26

**Page 2 of 2** -    DEBTORS' REPORT REGARDING FINAL ORDER GRANTING DEBTORS'
                     MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-62584-pcm11    Doc 118    Filed 09/09/19

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| In re | Case No. 19-62584-pcm11 **LEAD CASE** |
|---|---|
| NORPAC Foods, Inc., Hermiston Foods, LLC, and Quincy Foods, LLC, | (Jointly Administered with Case Nos. 19-33102-pcm11 and 19-33103-pcm11) |
| Debtors. | **FINAL ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT** |

This matter came before the Court on ~~August 26~~September 10, 2019, upon Debtors'

Motion for ~~Interim and Orders Authorizing Debtors~~Authorization to Obtain Secured Credit

on Interim and Final Basis [Case No. 19-62584-pcm11, ECF No. 21; Case No.

19-33102-pcm11, ECF No. 21; Case No. 19-33103-pcm11, ECF No. 21] (the "Motion")

dated August 23, 2019, filed by Debtors ("Debtors") in the above-captioned Chapter 11

~~case~~cases (the "Case" and, with the consolidated Chapter 11 cases of all Debtors, the

"Cases") pursuant to Sections 105, 361, 362, 363, 364 and 507 of Title 11 of the United

States Code, 11 U.S.C. §§ 101 et. seq. (as amended, the "Bankruptcy Code"), Rules 2002,

**Page 1 of 20** -    INTERIM ORDER GRANTING DEBTORS' MOTION FOR
AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
BASIS

4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules (the "Local Rules") of the United States Bankruptcy Court for the District of Oregon, requesting, among other things entry of interim and final Orders (this "Order"):

(i) Authorizing Debtors to obtain secured postpetition financing on a super-priority basis (the "DIP Facility") subject only to the Carveout (defined herein), and the Permitted Liens (as defined in the Credit Agreement (defined herein)); (ii) authorizing Debtors to execute and enter into the Fourteenth Amendment to Credit Agreement (the "Fourteenth Amendment"), which amends the Credit Agreement dated as of November 15, 2017, among Debtors, as borrowers (in such capacity, "Borrowers"), the guarantors from time to time party thereto, and CoBank, ACB, a federally chartered instrumentality of the United States ("CoBank"), both in its capacity as sole lender (when referenced solely in its lender capacity, "Lender") and in its capacity as administrative agent for Lenders (when referenced solely in its administrative agent capacity, the "Administrative Agent") (as amended, including as amended by the Fourteenth Amendment, the "Credit Agreement") (a copy of which, incorporating all amendments (but excluding schedules and exhibits), has been filed with the Court, is available on the Court's website and is also available upon request by contacting counsel for Debtors), and to perform such other and further acts as may be required in connection with the Credit Agreement (as defined in the Credit Agreement);

(ii) Granting super-priority administrative expense claims to CoBank for the postpetition financing payable from, and having recourse to all of the prepetition and postpetition property of Debtors' estates (the "Estates") and all proceeds thereof (except for avoidance actions and the proceeds of avoidance actions) subject only to the Carveout and the valid, duly perfected, unavoidable ~~prepepetition~~ Permitted Liens, and granting liens for the postpetition financing to CoBank in all Postpetition Collateral (defined herein) in accordance with the Credit Agreement, and this Order;

(iii)    Scheduling a~~A~~ final hearing (the "Final Hearing") to be held on September 10, 2019, to consider entry of an Order authorizing, among other things, Debtors to obtain financing under the DIP Facility, the Credit Agreement, on a final basis (the "Order");

~~(iv)~~(iii)~~A Hearing~~ on the Motion having been held before the Court on ~~August 26~~September 10, 2019, to consider entry of this ~~Interim~~final Order, appearances being noted on the record, Debtors and CoBank having agreed to the entry of this ~~Interim~~final Order, all objections to the Order being resolved, overruled, or withdrawn, and after due deliberation and consideration and sufficient cause appearing therefor; now, therefore,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:

1.      Jurisdiction; Petition Date

(a)      This Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D), (K), (M), and (O).

(b)      On August 22, 2019, Debtors filed their Chapter 11 petitions (the "Petition Date"). Since the Petition Date, Debtors have remained in possession and control of their assets as debtors-in-possession pursuant to Sections 1107 and 1108 of Title 11 of Bankruptcy Code.

2.      Disposition. The Motion is hereby granted, effective as of the date of the ~~filing of the Motion~~final hearing, on ~~an interim~~a final basis on the terms set forth herein. Any objections to the Motion or to the relief sought in the Motion have been resolved, withdrawn, or are hereby overruled on the merits. This Order shall be valid, binding on all parties-in-interest and fully effective on ~~an interim~~a final basis upon entry by the Court.

3.      Notice. The ~~Interim~~final Hearing with respect to the Motion was held pursuant to the authorization of Bankruptcy Rule 4001(c)(2).

**Page 3 of 20** -      INTERIM ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM BASIS

4.      Debtors' Stipulations Regarding Prepetition Indebtedness.  In connection with the Credit Agreement, the other Loan Documents, and this Order, Debtors acknowledge, represent, stipulate, and agree (subject to paragraph 21 below) that:

(a)      The Administrative Agent, on behalf of Lenders (as defined in the Credit Agreement), is the holder of a claim immediately prior to the filing of the petitions, against Debtors in the approximate sum of $125,179,773.94 consisting of borrowings of $123,226,611.31, accrued interest of $1,948,564.12, accrued fees of $4,598.51, plus all other costs, fees and obligations owing, including, without limitation, all costs and expenses of administration, collection and enforcement incurred by the Administrative Agent prior to the Petition Date (the "Prepetition Indebtedness").  To the extent permitted under Section 506(b) of the Bankruptcy Code, CoBank is also entitled to interest accrued after commencement of the Cases and the reasonable fees, costs and charges referred to in Section 506(b).

(b)      The Prepetition Indebtedness is evidenced by, without limitation, (i) the Credit Agreement; (ii) outstanding principal obligations of no less than $36,621,623.99 pursuant to a Term Loan Note dated November 15, 2017, by the Borrowers in favor of CoBank; (iii) outstanding principal obligations of no less than $82,500,000.00 pursuant to a Revolving Note dated November 15, 2017, by the Borrowers in favor of CoBank; (iv) no less than $800,000 in Letter of Credit Obligations (as defined in the Credit Agreement); (v) outstanding principal obligations of no less than $4,104,987.32 on all Swing Line Loans made under the Loan Documents; (vi) and by certain other documents relating to the foregoing, including the Loan Documents.

(c)      Payment of the Prepetition Indebtedness is absolutely and unconditionally due and payable, without defense, offset, or counterclaim, and Debtors waive and release (i) any right to object to the allowance of, and any defense with respect to, the Prepetition Indebtedness; and (ii) any right to contest the priority, perfection or validity of the liens securing such Prepetition Indebtedness.

**Page 4 of 20** -      INTERIM ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM BASIS

(d)      Pursuant to Section 552(b) of the Bankruptcy Code and the Loan

Documents, including, without limitation, a Security Agreement dated as of November 15,

2017 among Borrowers and the Administrative Agent and certain Mortgages (as defined in

the Credit Agreement) entered into by Borrowers prior to the Petition Date, the Prepetition

Indebtedness is secured by a security interest and lien in substantially all of Debtors' real and

personal property, whether now owned or existing or hereafter acquired or arising, including,

without limitation, all accounts, chattel paper and electronic chattel paper, deposit accounts,

documents, equipment, general intangibles, goods, instruments, investment property,

intellectual property rights, inventory, letter of credit rights, letters of credit, together with all

substitutions and replacements for and products of any of the foregoing, the proceeds of any

and all of the foregoing and all proceeds and products of such collateral security acquired by

the Estates after the commencement of the Cases (such collateral security, proceeds and

products are to the extent valid, enforceable, secured, perfected and unavoidable: herein

called the "Prepetition Collateral").

5.      Findings Regarding the DIP Facility Based on the Record at the Hearing

(a)      It is necessary for Debtors to obtain postpetition financing for a period

of time and in an amount which would allow Debtors to continue to operate as a going

concern, to enable Debtors to continue to operate their cooperative, to pay employees, and to

preserve the value of their assets.  An immediate need exists for Debtors to obtain further

credit from CoBank.  Without such funds Debtors will not be able to continue the operation

of their business and to pay their employees, and reorganization, including a Specified Sale

(as defined herein) may become impossible.

(b)      CoBank has indicated a willingness to extend postpetition secured

credit under the terms and conditions of this Order and the Credit Agreement.  Debtors are

unable to obtain financing on terms more favorable than terms offered by CoBank under the

Credit Agreement and are unable to obtain adequate unsecured credit allowable under

**Page 5 of 20** -      INTERIM ORDER GRANTING DEBTORS' MOTION FOR
                        AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                        BASIS

Section 503(b)(1) of the Bankruptcy Code as an administrative expense. Debtors are also unable to obtain secured credit under Section 364(c) and (d) of the Bankruptcy Code on terms more favorable than those set forth in the Credit Agreement.

(c)     The terms of the Credit Agreement are fair and reasonable, were negotiated by the parties at arm's length and in good faith and are the best available to Debtors under present market conditions and Debtors' financial circumstances. Based on the foregoing, any credit extended under the Credit Agreement by CoBank is extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

(d)     Debtors, in order to satisfy their need for postpetition financing, as determined in the exercise of their sound business judgment, desire the Court to enter this Order. Entry of this Order is necessary to prevent irreparable harm to Debtors, including the harm that would result from the disruption of Debtors' business, will increase the possibilities for a successful reorganization, including a Specified Sale, as a going concern, and is in the best interest of Debtors' Estates. Absent entry of this Order, Debtors' Estates will be immediately and irreparably harmed. Consummation of the DIP Facility is in the best interest of Debtors' Estates.

6.     Authorization of the DIP Facility and Fourteenth Amendment

(a)     Borrowers are authorized to enter into the DIP Facility and the Fourteenth Amendment and to incur postpetition debt under the DIP Facility pursuant to the terms of the Credit Agreement and this Order; provided, however, that the release granted in the Fourteenth Amendment shall not be effective pending the Final Hearing.. To the extent of any conflict between this Order and the Fourteenth Amendment, this Order shall govern.

(b)     In accordance with the terms of this Order and the Credit Agreement, the DIP Facility shall be used to (i) fund the working capital requirements and other financing needs of Debtors during the pendency of the Cases, (ii) pay other costs and expenses of the administration of the Case, and (iii) pay fees and expenses (including,

without limitation, attorney's fees and advisory fees owed to CoBank , including, without limitation, reasonable fees and expenses incurred prior to the commencement of the Case). Use of funds shall further be consistent with the Budget attached hereto as **Exhibit 1**, which may be amended from time to time by delivery of a revised and updated Budget by Debtors to CoBank and which shall be effective and become the Budget referred to herein only upon written approval of such amended Budget by CoBank in its reasonable discretion. Compliance with the Budget shall be determined as follows: actual Net Cash Flow as reported by Wednesday of each week and calculated as of Friday of the immediately preceding week for the four-week period then ending shall not be less than 85% of Net Cash Flow forecasted for such four-week period as set forth in the Budget then in effect. The DIP Facility shall not be used to pay any fees or expenses incurred at any time in connection with the filing or prosecution of any action which seeks to invalidate, challenge, dispute, avoid, subordinate or otherwise impair the claims of the Administrative Agent or any Lenders, or any liens or priorities in favor of the Administrative Agent (on behalf of Lenders), or which seeks to recover on any claims against or transfers made to the Administrative Agent or any Lenders; provided, however, that the DIP Facility may be used to pay fees or expenses incurred by the official committee of unsecured creditors in the Debtors' Chapter 11 cases (the "Committee") to Committee may investigate the liens, security interests, and claims of the Administrative Agent and Lenders.

        (c)     Subject to the Local Rules, any and all fees and expenses paid or required to be paid in connection with the Credit Agreement shall be paid by Debtors as detailed therein.

        (d)     Debtors are hereby authorized and directed to pay the DIP Facility Fee (as defined in the Fourteenth Amendment) in accordance with Section 2.7(b) of the Credit Agreement.

**Page 7 of 20** - INTERIM ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM BASIS

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-62584-pcm11    Doc 118    Filed 09/09/19

(e)　　In furtherance of the foregoing and without further approval of the Court, Debtors are authorized and directed on ~~an interim~~a final basis to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages and financing statements) that may be required or necessary (including necessary by reason of request by CoBank) for Debtors' performance under the Credit Agreement or this Order.

(f)　　Upon satisfaction of the conditions precedent set forth in the Credit Agreement and the entry of this Order, obligations, agreements and covenants of Debtors under the Credit Agreement shall be valid and binding and enforceable against Debtors under the terms of the Credit Agreement and this Order.  Subject to paragraph 21 below, no payment, advance, financial accommodation, transfer, or grant of security under the Credit Agreement or this Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including Section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.　　<u>DIP Facility Advances; Effective Date</u>

(a)　　Revolving advances made under the DIP Facility from and after the DIP Facility Effective Date (defined herein) until the DIP Facility Maturity Date (defined herein) shall be governed by the terms and conditions of the Credit Agreement and this Order, including, without limitation, the terms and conditions governing the applicable interest rates.  The "DIP Facility Maturity Date" shall mean the earliest of (i) October 31, 2019, (ii) the closing of a sale of all or substantially all of the assets of Debtors pursuant to a sale under Section 363 of the Bankruptcy Code (a "Specified Sale," as further defined in the Credit Agreement), or (iii) the effective date of a confirmed plan under Section 1129 of the Bankruptcy Code.  The "Postpetition Indebtedness" shall be all Obligations (as such term is defined in the Credit Agreement) arising subsequent to the Petition Date, including

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

postpetition interest.  The "DIP Facility Effective Date" shall be the date upon which the Court enters this Order.

(b)     CoBank shall not be required to extend credit under the DIP Facility unless and until CoBank and its legal counsel are satisfied that:  (i) the conditions precedent for such credit extensions set forth in the Credit Agreement have been met; and (ii) no Event of Default under this Order has occurred.

8.     Postpetition Indebtedness; Liens and Priority

(a)     The Postpetition Indebtedness shall be:

(i)     allowable under Section 503(b)(1) of the Code as an administrative expense with priority pursuant to the provisions of Section 364(c)(1) of the Code over all other administrative expenses of the kind specified in Section 503(b) or Section 507(b) of the Code and all other expenses and claims, subject only to the Carveout; provided however, such claims shall not extend to the avoidance actions and the proceeds thereof under Sections 544, 547, 548, 549 and 553 of the Bankruptcy Code (the "Avoidance Actions");

(ii)     secured by (and the Administrative Agent (on behalf of Lenders) is hereby granted) a security interest in and lien on all present and future property of the Estates, including both real and personal property, whether now owned or existing or hereafter acquired or arising by the Estates, including specifically and without limitation (but specifically excluding the Avoidance Actions):  (A) all of the Estates' now owned or existing or hereafter acquired or arising accounts, chattel paper and electronic chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, investment property, intellectual property rights, inventory, letter of credit rights, letters of credit, and any items in any lockbox account; together with (i) all substitutions and replacements for and products of any of the foregoing; (ii) in the case of all goods, all accessions; (iii) all accessories, attachments, parts, and repairs now or hereafter attached or affixed to or used in

**Page 9 of 20** -     INTERIM ORDER GRANTING DEBTORS' MOTION FOR
AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
BASIS

connection with any goods; (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering any of the foregoing; (v) all collateral subject to the lien of any security document in favor of the Administrative Agent; (vi) any money, or other assets of Debtors that may or hereafter come into possession, custody or control of the Administrative Agent or any Lenders; (vii) proceeds of any and all of the foregoing; (viii) books and records of Debtors, including all mail or electronic mail addressed to Debtors; (ix) all of the foregoing, whether now owned or existing or hereafter acquired or arising or in which Debtors now have or hereafter acquire any rights; and (x) all proceeds and products of such collateral security acquired by the Estates, (B) the Prepetition Collateral, (C) all real estate of the Estates; provided, however, that no lien shall attach directly to any of Debtors' leasehold interests, but shall only attach to the proceeds of the sale or disposition of such lease, unless (i) expressly permitted by the terms of that lease, or (ii) Debtors have consent of the applicable landlord to grant the Administrative Agent a lien or deed of trust on such leasehold, and (D) all proceeds, products, rents, issues and profits of all of the foregoing (all herein referred to as the "Postpetition Collateral"), which lien and security interest shall have priority over all other liens, claims and expenses in Debtors' Cases except with respect to the (i) Carveout, (ii) all valid, duly perfected, unavoidable agricultural produce and grain producer liens pursuant to ORS 87.705 and ORS 87.755 and processor and preparer liens pursuant to RCW 60.13.020 and RCW 60.13.030 (the "Growers" Liens"), (iii) all other valid, duly perfected, unavoidable Permitted Liens, and (iiiiv) valid beneficiaries of assets subject to a trust arising under PACA (as defined in the Credit Agreement). The liens and security interests granted above to secure payment of the Postpetition Indebtedness shall be valid and enforceable regardless of whether the Court determines that some or all of the security interests and liens held by the Administrative Agent in the Prepetition Collateral are unenforceable for any reason.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

(iii) Notwithstanding anything to the contrary in this Order, the lien and security interest priorities set forth in (i) the May 15, 2012, letter agreement between NORPAC Foods, Inc., Henningsen Cold Storage Co., and CoBank, ACB, and (ii) the August 8, 2018, Acknowledgment of Security Interest and Waiver of Liens, between Lineage Logistics, LLC, Millard Refrigerated Services, LLC, Terminal Freezers, LLC, NORPAC Foods, Inc., Quincy Foods, LLC, and CoBank, ACB, remain binding, valid and enforceable.

9. <u>Perfection of CoBank Liens</u>. Entry of this Order automatically perfects the liens granted by paragraph 8 of this Order.

10. <u>CoBank; Use of Collateral; Adequate Protection; Application of Funds</u>

(a) Any cash collateral of Lenders used by Debtors since the commencement of Debtors' Cases shall constitute Postpetition Indebtedness under the DIP Facility.

(b) Any use of cash collateral shall be treated as a simultaneous reduction of Prepetition Indebtedness and an increase in Postpetition Indebtedness, in each case by the amount of such use of cash collateral.

(c) Debtors' use of CoBank's cash collateral as of any week shall not exceed the aggregate amount of operating and non-operating disbursements permitted for such week as set forth in the Budget.

(d) Debtors shall account for all cash proceeds (and cash equivalents) of Collateral, and such accounting shall be applied to the Prepetition Indebtedness and the Postpetition Indebtedness as provided in the Credit Agreement.

(e) Absent manifest error, application of funds by CoBank to the reduction of the Prepetition Indebtedness or the Postpetition Indebtedness shall be final. Nothing shall impair the validity of such application or such security interest or lien, subject to paragraph 21 below.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

11.    <u>Events of Default</u>.  The Events of Default contained in the Credit Agreement (as amended by the Fourteenth Amendment) are hereby approved and incorporated herein by reference.  For the avoidance of doubt, the failure of Debtors to meet any of the Milestones included as Affirmative Covenants in the Credit Agrement (each as defined in the Credit Agreement), shall be Events of Default.  Such Milestones include:

(a)    As contained in Section 6.14(b) of the Credit Agreement, by September 27, 2019, the Bankruptcy Court shall have entered an order or orders approving bidding procedures for the Specified Sale, which such order or orders shall be in form and substance acceptable to the Administrative Agent in its sole discretion;

(b)    As contained in Section 6.14(c) of the Credit Agreement, by October 28, 2019, the Bankruptcy Court shall have entered orders approving the sale of all or substantially all of the assets of Borrowers, on such terms acceptable to the Administrative Agent in its sole discretion which orders shall be in form and substance acceptable to the Administrative Agent in its sole discretion; and

(c)    As contained in Section 6.14(c) of the Credit Agreement, by October 31, 2019, the transactions contemplated in the Specified Sale Order shall have been consummated.

For the further avoidance of doubt, the failure of Debtors to comply with all Negative Covenants in the Credit Agreement (each as defined in the Credit Agreement), shall be Events of Default, including but not limited to new Section 7.19 of the Credit Agreement which provides:

(a)    Borrowers will not seek any debtor-in-possession financing (other than the financing provided under [the Credit] Agreement) until (a) all Prepetition Letters of Credit have been terminated, cash collateralized in an amount equal to 105% of the aggregate face amount of such Prepetition Letters of Credit, or supported by one or more letters of credit naming the Administrative Agent as beneficiary with terms and conditions (and issued

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

by one or more financial institutions) acceptable to the Administrative Agent in its sole discretion, (b) all other Obligations (other than contingent indemnification obligations) at any time owing by Borrowers to the Administrative Agent or any Lender have been paid in full in cash and (c) all commitments of Lenders under the Loan Documents (including, without limitation, under the DIP Facility) have been terminated.

(b)     Borrowers shall not open any new deposit, securities or commodity accounts, except (i) accounts maintained with the Administrative Agent or (ii) deposit accounts maintained with other financial institutions so long as such account is subject to a first-priority perfected Lien in favor of the Administrative Agent and Borrowers have delivered to the Administrative Agent a fully-executed deposit account control agreement in form and substance acceptable to the Administrative Agent.

(c)     Without the prior written consent of the Administrative Agent, no proceeds of the DIP Facility shall be used in a manner or for a purpose other than in accordance with the Budget and this Agreement.

(d)     Borrowers shall not grant any new Liens in favor of any Person (other than the Administrative Agent and Lenders) on any of the Collateral or Postpetition Collateral, nor seek to prime any Lien of the Administrative Agent or Lenders on any of the Collateral or the Postpetition Collateral.

12.     <u>Remedies</u>.  Upon the occurrence of an Event of Default:

(a)     CoBank and the other Lenders may refuse to make revolving advances; and

(b)     the Administrative Agent shall be entitled to relief from the automatic stay to enforce its rights and remedies under this ~~Interim~~final Order, the Credit Agreement, the Loan Documents and any applicable law upon filing an affidavit (the "<u>Affidavit</u>") with the Court certifying the occurrence of an Event of Default.  Contemporaneously with such filing, (i) the Administrative Agent shall serve a copy of the Affidavit upon Debtors, the

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Committee and the U.S. Trustee's Office, and (ii) the Administrative Agent may request an expedited hearing regarding relief from the automatic stay, which such hearing may be scheduled within four business days of the filing of the Affidavit. Debtors, the Committee and the Office of the U.S. Trustee shall be entitled to file a response to the Affidavit with the Court, but such response must be limited to whether an Event of Default has occurred that has not been cured. Such response shall be served on counsel to the Administrative Agent. If Debtors, the Committee, and the Office of the United States Trustee fail to file such a response, the Court may enter an order terminating the automatic stay.

13. <u>Application of Proceeds Upon Sale</u>. Upon the consummation of a Specified Sale or a sale of any of <u>the</u> Debtors' assets and the entry of the Specified Sale Order by the Court, ~~all~~ proceeds from such sale shall <u>be</u> immediately ~~be turned over~~<u>distributed as follows: (i) first, sufficient funds shall be set aside to pay any valid PACA trust claims which remain unpaid; (ii) second,</u> to CoBank ~~to be applied~~<u>in an amount sufficient</u> to <u>fully repay</u> the outstanding <u>loans and other obligations and</u> amounts owing <u>to CoBank</u> in accordance with the Loan Documents ~~pursuant to~~ <u>(the "CoBank Payoff Amount"), and (iii) third, all amounts in excess of the CoBank Payoff Amount shall be disbursed by [the Debtors] in accordance with orders of the Court. In the event of a conflict between this paragraph 13 of this Order and</u> Section ~~-~~ 2.13 of the Credit Agreement<u>, the provisions of this paragraph shall govern</u>.

14. <u>No Marshaling</u>. In no event shall CoBank be subject to the equitable doctrine of marshaling or any similar doctrine.

15. <u>Retention of Counsel and Consultants; Costs and Expenses</u>. CoBank is authorized to retain such counsel and consultants (including financial consultants and investment bankers) as CoBank may determine from time to time in its reasonable discretion. Payment of reasonable fees and expenses incurred by CoBank in connection with the Loan Documents, the Cases, and all matters related to any of the foregoing, including, without limitation, all fees and disbursements of legal counsel of CoBank, all fees and disbursements

**Page 14 of 20** - INTERIM ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM BASIS

of consultants to CoBank (including financial consultants), all appraisal fees, all title costs or fees, filing fees, mortgage registry tax, recording and other out-of-pocket expenses incurred by CoBank shall be paid by Debtors pursuant to the terms of the Credit Agreement, subject to the procedures set forth in the Local Rules.

16.     Allowance for Improvements made by the Estates.  In consideration of Debtors' use of the Collateral in accordance with the Loan Documents, and in view of the effect of such use, (i) the Collateral shall not be subject to any surcharge under Section 506(c) of the Bankruptcy Code and (ii) the "equities of the case" exception in section 552 shall not apply with respect to the Collateral.

17.     Successors and Assigns.  Except as otherwise stated herein, the provisions of this ~~Interim~~final Order shall be binding upon all persons and entities and shall inure to the benefit of CoBank, Debtors and their respective successors and assigns, including, without limitation, any subsequent Chapter 11 or Chapter 7 trustee.

18.     Carveout for United States Trustee Fees and Professional Fees.  Subject to the terms and conditions contained in this paragraph 18, all prepetition and postpetition claims (whether secured or unsecured) of CoBank, including CoBank's super-priority administrative expense claim, are subordinate to the Carveout (as defined below).  As used herein, the term "Carveout" shall mean unpaid amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and fees payable to the clerk of the Court; and Administrative Expenses for fees and expenses of attorneys and financial advisors employed by Debtors and the Committee (including allowed expenses of the members of such statutory committees) pursuant to Sections 327 and 1103 of the Bankruptcy Code (i) which were provided for in the Budget and incurred prior to an Event of Default but not yet paid; and (ii) an aggregate amount not to exceed $300,000 for reasonable fees and expenses incurred following a Postpetition Event of Default; but specifically excluding any success, completion or similar fees.  The Carveout shall exclude any fees and expenses incurred in connection with the assertion or joinder in any claim,

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief invalidating, setting aside, avoiding, subordinating, or otherwise adversely affecting CoBank's claims against the Estates (including the Prepetition Indebtedness, the Postpetition Indebtedness, and CoBank's liens on the Collateral) each a Challenge (as defined herein~~)~~.); provided, however, that the Carveout may include any fees and expenses incurred by the Committee relating to the investigation of liens, security interests and claims of the Administrative Agent and Lenders.

19.     <u>Stay; Modification</u>.  No subsequent stay, modification, termination, failure to extend the term, or vacation of this Order shall affect, limit or modify the validity, priority or enforceability of any liability of Debtors under the Credit Agreement, or any lien or security interest granted to CoBank under such documents.  All credit extended under the Credit Agreement is made in reliance on this Order, and, except as set forth below, the obligations incurred by Debtors to CoBank under the Credit Agreement cannot be subordinated, lose superpriority status, or be deprived of the benefit of the senior liens granted to CoBank, by any subsequent order in Debtors' Chapter 11 Cases or converted Chapter 7 cases.  The provisions of this Order dealing with the liability of Debtors under the Credit Agreement shall not be modified or superseded by any order confirming a plan of reorganization (including the use of the cram-down provisions of section 1129(b) of the Code) in Debtors' Cases.  If any party shall appeal any order approving the DIP Facility or shall successfully challenge the validity, perfection, or priority of any pre-petition liens in favor of the Administrative Agent (on behalf of Lenders), Lenders may terminate their commitment to fund any DIP Advances (as defined in the Credit Agreement) and stop funding any DIP Advances upon written notice to Debtors.

20.     <u>Preservation of Rights Under This Order</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered

**Page 16 of 20** -   INTERIM ORDER GRANTING DEBTORS' MOTION FOR
                        AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM
                        BASIS

(a) converting Debtors' Cases to Chapter 7 cases, (b) confirming or consummating any plan of reorganization of Debtors or (c) dismissing Debtors' Cases or any subsequent Chapter 7 cases pursuant to Sections 303, 305, or 1112 of the Bankruptcy Code, and the terms and provisions of this Order as well as the priorities in payment, liens, and security interests granted pursuant to this Order and the Credit Agreement shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Order until all Obligations are indefeasibly paid and satisfied.

21.    <u>Challenge of Claim or Lien</u>.  The acknowledgements and admissions of Debtors in paragraph 4 ~~of~~ hereof shall be binding on their Estates and all parties in interest, including, without limitation, any Committee, unless the Committee or other party in interest has filed an adversary proceeding or contested matter challenging any such acknowledgements or admissions (each a "<u>Challenge</u>"), no later than October 17, 2019 subject to extension or written consent of CoBank and the Committee or order of the court for cause.  If no such adversary proceeding or contested matter is timely commenced as of such date, the Prepetition Indebtedness of CoBank shall constitute allowed secured claims, not subject to objection or subordination and otherwise unavoidable, and the pre-petition liens of CoBank on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, or subordination, and otherwise unavoidable except with respect to the value of the Prepetition Collateral which may be challenged at any time in the Cases without regard to the limitations of this paragraph.

22.    <u>Disgorgement; Recharacterization</u>.  Any and all payments made to CoBank pursuant to this Order including, but not limited to principal, interest, fees, and expenses, shall be subject to disgorgement and/or recharacterization (for example, a payment of interest may be recharacterized to pay down principal) upon a successful Challenge.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

23.     <u>Right to Credit Bid</u>.  The right of CoBank to credit bid the obligations owed to CoBank by Debtors (pursuant to Section 363(k) of the Bankruptcy Code), in whole or in part, in connection with any sale or disposition of assets in the Cases (including in connection with a plan of reorganization for which confirmation is sought under Section 1129(b)(2)(A)(i)) is hereby expressly reserved and preserved by this Order.

24.     <u>Amendments and Modifications</u>.  Debtors and CoBank may enter into any non-material amendments or modifications to the Credit Agreement without notice or a hearing or further order of this Court; provided, however, that any such modifications shall be filed with the Court and shall not be adverse to Debtors or their Estates.

25.     <u>Invoicing</u>.  Following entry of this ~~Interim~~final Order and continuing thereafter for so long as the Obligations are outstanding, CoBank is authorized to issue invoices to Debtors regarding the Obligations and any related fees, expenses, and interest in accordance with CoBank's prior pre-petition practice, such issuances shall not be deemed to be in violation Section 362 of the Bankruptcy Code.  Payments will be in accordance with the terms of this Order and Local Bankruptcy Rule 2016-1.

26.     <u>Order Governs</u>.   Except as otherwise specifically provided in this Order, in the event of a conflict between the provisions of this Order, the Motion, and the Loan Documents, the provisions of this Order shall govern.  In the event of a conflict between this Order and the Interim Order, the provisions of this Order shall govern.

~~27.     Final Hearing.  The final hearing on approval of the DIP Facility is scheduled for September 10, 2019 at 1:30 p.m. prevailing Pacific time in Courtroom No. 4 of the United States Bankruptcy Court, 1050 SW Sixth Avenue, Portland, Oregon.~~

~~28.     Notice of Final Hearing; Objections to Entry of Final Order.  The Debtor shall mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including notice that Debtors will seek at the Final Hearing a waiver of rights under Section 506(c) of the Bankruptcy Code) within three business days from the date of entry of~~

this Interim Order to the parties that received notice of the Interim Hearing, any other party that has filed a request for notices with the Court, to the Office of the United States Trustee and to counsel for any Committee that may be appointed in the Case. Any party in interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file and serve such objection so as to be received no later than September 5, 2019, at 4:00 p.m. prevailing Pacific time on the following:

(a)      Tonkon Torp LLP; 1600 Pioneer Tower; 888 SW Fifth Avenue; Portland, Oregon 97204; Attention: Albert Kennedy; Albert.Kennedy@tonkon.com;

(b)      Faegre Baker Daniels, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, Minnesota 55402; Attention: Michael Stewart and Breia Schleuss; Michael.Stewart@Faegrebd.com; Breia.Schleuss@Faegrebd.com;;

(c)      Miller Nash Graham & Dunn LLP, 3400 U.S. Bancorp Tower, 111 S.W. Fifth Avenue, Portland, Oregon 97204; Attention: Teresa Pearson; Teresa.Pearson@MillerNash.com;

27.    Office of the United States Trustee for the District of Oregon.PACA. Notwithstanding anything to the contrary contained therein, nothing in this Order, any interim order, the Credit Agreement, or the other Loan Documents, shall be construed to prime, subordinate, diminish or impair the rights of valid trust beneficiaries under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"), and nothing contained in this Order, any interim order, the Credit Agreement, or the other Loan Documents shall be construed to require that valid PACA beneficiaries must bring a Challenge in order to assert or preserve such rights.  In the event of a Specified Sale or a sale of any of the Debtors' assets, including in the event of a credit bid, sufficient funds must be set aside to ensure any valid PACA claims which remain unpaid are paid in full.

28.    Growers' Liens; Adequate Protection.  To provide adequate protection to the holders of Growers' Liens (the "Growers") for any decrease in the value of their interest in

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

cash collateral caused by the Debtors' use or sale of the property subject to their liens, the Growers are granted replacement liens on all property of the Debtors acquired either prepetition or postpetition of the same type and category as the property on which the Growers held prepetition liens (i.e., all raw and processed agricultural produce and the proceeds thereof, including without limitation, accounts) of the same priority as the Growers' prepetition liens.  As further adequate protection, the Debtors will make timely payment of all amounts coming due under their contracts with the Growers, subject to, and in accordance with the Budget and paragraph 6.(b) of this Order.

# # #

I certify that I have complied with the requirements of LBR 9021-1(a).

Presented by:

TONKON TORP LLP

By /s/ Albert N. KennedyBy
    Albert N. Kennedy, OSB No. 821429
    Timothy J. Conway, OSB No. 851752
    Michael W. Fletcher, OSB No. 010448
    Ava L. Schoen, OSB No. 044072
    888 S.W. Fifth Avenue, Suite 1600
    Portland, OR 97204-2099
    Telephone:  503-221-1440
    Facsimile:  503-274-8779
    E-mail:   al.kennedy@tonkon.com
           tim.conway@tonkon.com
           michael.fletcher@tonkon.com
           ava.schoen@tonkon.com
    Attorneys for Debtors

cc:    List of Interested Parties

009684/00004/10295443v4

**Page 20 of 20** -   INTERIM ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO OBTAIN SECURED CREDIT ON INTERIM BASIS

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 19-62584-pcm11   Doc 118   Filed 09/09/19