Teresa H. Pearson, OSB No. 953750
teresa.pearson@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: (503) 224-5858
Facsimile: (503) 224-0155

Michael R. Stewart (MN 122397), admitted *pro hac vice*
Michael.Stewart@FaegreBD.com
Dennis M. Ryan (MN 161275), admitted *pro hac vice*
Dennis.Ryan@FaegreBD.com
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

Attorneys for Creditor CoBank, ACB, as Administrative Agent and Lender

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>NORPAC Foods, Inc., Hermiston Foods, LLC, and Quincy Foods, LLC,<br><br>        Debtors. | Case No. 19-62584-pcm11<br>**LEAD CASE**<br><br>(Jointly Administered with Case Nos. 19-33102-pcm11 and 19-33103-pcm11)<br><br>MOTION TO APPROVE FIRST AMENDMENT TO FORBEARANCE AGREEMENT |

       CoBank, ACB, as Administrative Agent and Lender ("CoBank"), hereby moves the Court for an order approving a First Amendment to Forbearance Agreement with Debtors. A copy of the proposed First Amendment to Forbearance Agreement is attached to this motion as Exhibit 1. A copy of the Budget referenced in the Forbearance Agreement is attached to this motion as Exhibit 2. In support of the motion, CoBank hereby represents as follows:

**Page 1 of 3**    Motion to Approve First Amendment to Forbearance Agreement

4812-4778-5133.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 19-62584-pcm11    Doc 415    Filed 11/18/19

1. On August 22, 2010, the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On August 26, 2019, the Court entered the Interim Order Granting Debtors' Motion for Authorization to Obtain Secured Credit on an Interim Basis (ECF 44).

3. On September 13, 2019, the Court entered the Final Order Granting Debtors' Motion for Authorization to Obtain Secured Credit (ECF 147). On September 25, 2019, the Court entered the Amended Final Order Granting Debtors' Motion for Authorization to Obtain Secured Credit (Amended Only for the Purpose of Attaching Budget) (ECF 202; as amended, the "DIP Financing Order").

4. Pursuant to the DIP Financing Order, the debtor-in-possession financing matured on the earlier of October 31, 2019, the closing of a sale of all or substantially all of the assets of Debtors under Section 363 of the Bankruptcy Code, or the effective date of a confirmed plan under Section 1129 of the Bankruptcy Code.

5. The debtor-in-possession financing facility matured on October 31, 2019. Despite the Debtors' efforts to sell their assets to Oregon Potato Company, no sale of all or substantially all of the assets of the Debtors has occurred. The Debtors have not confirmed a plan. At this time, the Debtors are in default under the DIP Financing Order.

6. On November 6, 2019, this Court entered its Order Approving Forbearance Agreement (ECF 340). Pursuant to that Order, CoBank and the Debtors entered into a Forbearance Agreement, which provided for a forbearance period ending no later than November 15, 2019. That forbearance period has now ended.

7. CoBank believes that it would be appropriate to provide for an additional forbearance period until November 25, 2019, for the Debtors to continue to pursue various sale efforts, and to provide for an orderly process in the event that other sales are not viable.

**Page 2 of 3**    Motion to Approve First Amendment to Forbearance Agreement

4812-4778-5133.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 19-62584-pcm11    Doc 415    Filed 11/18/19

8.      CoBank is willing to enter into the First Amendment to Forbearance Agreement, provided that (a) CoBank retains all of the protections of the DIP Financing Order for Debtor's use of cash collateral pursuant to the Forbearance Agreement, (b) any advances made by CoBank under the Forbearance Agreement will be treated as Postpetition Indebtedness under the DIP Financing Order, and (c) all of the conditions to the effectiveness of the First Amendment to the Forbearance Agreement are satisfied.  For the avoidance of doubt, and without limitation, any advances made by CoBank under the Forbearance Agreement will be entitled to the treatment and priority described in paragraph 8 of the DIP Financing Order.

9.      By this Motion, CoBank is not requesting any modification of the Stipulated Order re Limited Extension of Deadline for Challenges (ECF 254), or the Stipulated Order re Further Limited Extension of Deadline for Challenges (ECF 401).

WHEREFORE, CoBank requests that the Court enter an order approving the First Amendment to Forbearance Agreement, in the form attached hereto as Exhibit 3.

DATED this 18th day of November, 2019.

MILLER NASH GRAHAM & DUNN LLP

*/s/ Teresa H. Pearson*

Teresa H. Pearson, OSB No. 953750
teresa.pearson@millernash.com
T: (503) 224-5858  |  F: (503) 224-0155
and
FAEGRE BAKER DANIELS LLP
Michael R. Stewart (MN 122397), admitted *pro hac vice*
Michael.Stewart@FaegreBD.com
Dennis M. Ryan (MN 161275), admitted *pro hac vice*
Dennis.Ryan@FaegreBD.com
T: (612) 766-7000  |  F:  (612) 766-1600

Attorneys for Creditor CoBank, ACB, as Administrative Agent and Lender

4812-4778-5133.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# FIRST AMENDMENT TO FORBEARANCE AGREEMENT

This Amendment is entered into as of November *[__]*, 2019 by and among NORPAC Foods, Inc., an Oregon cooperative corporation ("NORPAC"), Hermiston Foods, LLC, an Oregon limited liability company ("Hermiston"), and Quincy Foods, LLC, a Washington limited liability company ("Quincy"; together with NORPAC and Hermiston, the "Borrowers"), the Lenders (as defined in the Credit Agreement described below) signatory hereto, and CoBank, ACB, a federally chartered instrumentality of the United States, as administrative agent (in such capacity, the "Administrative Agent") under the Credit Agreement described below.

The Borrowers, the Lenders and the Administrative Agent are parties to (i) a Credit Agreement dated as of November 15, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") and (ii) a Forbearance Agreement dated as of November 7, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Forbearance Agreement").

The Borrowers have requested that the Administrative Agent and the Lenders amend the Forbearance Agreement to, among other things, extend the Forbearance Period (as defined in the Forbearance Agreement) for a limited period of time. The Administrative Agent and the Lenders are willing to grant the Borrowers' request on the terms and subject to the conditions set forth herein.

ACCORDINGLY, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. **Definitions**. As used herein, capitalized terms used in this Amendment but not otherwise defined herein shall have the meanings assigned to them in the Credit Agreement or the Forbearance Agreement, as applicable.

2. **Amendments to the Forbearance Agreement**. Section 1 of the Forbearance Agreement is amended by amending and restating the following definitions to read as follows:

"'Forbearance Termination Event' means the occurrence of any of the following:

        (a)        the occurrence of the Stated Forbearance Termination Date; or

        (b)        the occurrence of any of the following, but only if the Administrative Agent, in its sole discretion, has designated such occurrence as a Forbearance Termination Event effective as of the date specified in such notice:

                (i)        any Default or Event of Default under any Loan Document (other than the Specified Defaults);

                (ii)        the Administrative Agent or any Lender becomes aware of or determines that any Default or Event of Default (other than the Specified Defaults) had occurred and was continuing under any Loan Document as of the date of this Agreement;

                (iii)        any Borrower or any other Loan Party fails to comply in any respect with any term, condition or provision of this Agreement; or

(iv)    Oregon Potato Company ("OPC") withdraws from the Asset Purchase Agreement dated November 15, 2019 among the Borrowers and OPC, or OPC otherwise notifies any Borrower that OPC does not intend to proceed with the transactions contemplated thereunder."

"'Stated Forbearance Termination Date' means November 25, 2019 or such later date as the Administrative Agent may agree in its sole discretion."

3.      **Consent to Use of Cash Collateral**.  Without limiting any other provision of the Forbearance Agreement or the Credit Agreement, the Administrative Agent hereby consents to the Borrowers' Use of Cash Collateral during the Forbearance Period (as extended by this Amendment), provided that (i) as of any week, the Borrowers' Use of Cash Collateral shall not exceed the aggregate amount of operating and non-operating disbursements permitted for such week as set forth in the Budget and (ii) no Forbearance Termination Event has occurred.  Any Use of Cash Collateral shall be subject to the terms and conditions of the Credit Agreement, including, without limitation, that (x) any Use of Cash Collateral shall constitute a DIP Advance and Post-Petition Indebtedness entitled to super-priority administrative expense status and secured by the Post-Petition Collateral and (y) any Use of Cash Collateral shall be treated, for accounting purposes, as a simultaneous reduction of Pre-Petition Indebtedness and an increase in Post-Petition Indebtedness, in each case by the amount of such Use of Cash Collateral.

4.      **References**.  All references in the Forbearance Agreement to "this Agreement" shall be deemed to refer to the Forbearance Agreement as amended hereby, and any and all references in any other Loan Documents to the Forbearance Agreement shall be deemed to refer to the Forbearance Agreement as amended hereby.

5.      **No Other Changes**.  Except as amended by this Amendment, all terms of the Forbearance Agreement and the other Loan Documents remain in full force and effect.

6.      **Representations and Warranties**.  Each Borrower hereby represents and warrants to the Administrative Agent and each Lender as follows:

(a)     Subject to approval by the Bankruptcy Court, each Borrower has all requisite power and authority, corporate or otherwise, to execute and deliver this Amendment and any other documents delivered hereunder and to perform its obligations under this Amendment, the Credit Agreement, the Forbearance Agreement as amended hereby and the other Loan Documents.  This Amendment and the other Loan Documents have been duly and validly executed and delivered to the Administrative Agent by the Borrowers, and this Amendment, the Credit Agreement, the Forbearance Agreement as amended hereby and the other Loan Documents constitute the Borrowers' legal, valid and binding obligations, enforceable in accordance with their terms.

(b)     The execution, delivery and performance by each Borrower of this Amendment, and the performance of the Credit Agreement, the Forbearance Agreement as amended hereby and the other Loan Documents to which such Borrower is a party, have been duly authorized by all necessary corporate or other action of such Borrower and do not and will not (i) require any authorization, consent or approval by any Governmental Authority, (ii) violate such Borrower's Organizational Documents or any provision of any law, rule, regulation or order presently in effect having applicability to such Borrower, (iii) result in a breach of, or constitute a default under, any indenture or agreement to which such Borrower is a party or by which such Borrower or its properties may be bound or affected, or (iv) result in, or require, the creation or imposition of any Lien of any nature upon or with respect to any of the properties now owned or hereafter acquired

US.125513610.06

EXHIBIT 1
Page 2 of 7

by any Borrower (other than as required under the Loan Documents or as otherwise permitted by the Loan Documents).

(c) (i) The representations and warranties of each Borrower in the Loan Documents which are not otherwise qualified by materiality shall be true, correct and complete in all material respects on and as of the date hereof as though made on and as of such date, except to the extent that such representations and warranties relate solely to an earlier date, in which case such representations and warranties shall be true, correct and complete in all material respects as of the applicable earlier date(s); and (ii) the representations and warranties of each Borrower in the Loan Documents which are qualified by materiality shall be true, correct and complete in all respects on and as of the date hereof as though made on and as of such date, except to the extent that such representations and warranties relate solely to an earlier date, in which case such representations and warranties shall be true, correct and complete in all respects as of the applicable earlier date(s).

(d) Other than the Specified Defaults, no event has occurred and is continuing, or would result from the execution and delivery of this Amendment, which constitutes a Default, Event of Default or any other breach or default under the Loan Documents.

7. **Conditions to Effectiveness**. Sections 2 and 3 of this Amendment shall be effective only if the Administrative Agent has received, on or before the date of this Amendment (or such later date as the Administrative Agent may agree in writing), or waived in its sole discretion, each of the following, each in form and substance acceptable to the Administrative Agent in its sole discretion:

(a) this Amendment, duly executed by an Authorized Officer of each Borrower and an officer of each Lender;

(b) evidence of entry by the Bankruptcy Court of an order that approves this Amendment and the Forbearance Agreement as amended hereby and authorizes the Borrowers to enter into this Amendment and the transactions contemplated herein, in form and substance satisfactory to the Administrative Agent in its sole discretion;

(c) evidence of entry by the Bankruptcy Court of an order granting the Administrative Agent and the Lenders relief from the automatic stay, in form and substance satisfactory to the Administrative Agent in its sole discretion;

(d) an asset purchase agreement with respect to the sale of certain assets of the Borrowers, duly executed by an Authorized Officer of each Borrower and an officer of the applicable buyer, in form and substance satisfactory to the Administrative Agent in its sole discretion;

(e) an updated liquidation plan of the Borrowers, as certified by the CRO, in form, detail and substance acceptable to the Administrative Agent in its sole discretion;

(f) an updated Budget, in form, detail and substance acceptable to the Administrative Agent in its sole discretion;

(g) payment of all fees and expenses of the Administrative Agent (including the fees and expenses of the Administrative Agent and its counsel, advisors and consultants) to the extent invoiced prior to the date hereof; and

**EXHIBIT 1**
**Page 3 of 7**

(h)     such other assurances, certificates, documents, consents, reports or opinions as the Administrative Agent may require.

8.     **General Provisions**.

(a)     <u>Release</u>.  Each Borrower hereby absolutely and unconditionally releases and forever discharges each of the Administrative Agent and Lenders, and any and all of their respective participants, parent corporations, subsidiary corporations, affiliated corporations, insurers, indemnitors, successors and assigns, together with all of the present and former Directors, officers and employees, agents, attorneys and consultants of any of the foregoing, from any and all claims, demands or causes of action of any kind, nature or description, whether arising in law or equity or upon contract or tort or under any state or federal law or otherwise, which such Borrower has had, now has or has made claim to have against any such Person for or by reason of any act, omission, matter, cause or thing whatsoever occurring or arising from the beginning of time to and including the date of this Amendment, whether such claims, demands and causes of action are matured or unmatured or known or unknown.

(b)     <u>Costs and Expenses</u>.  Each Borrower hereby reaffirms its agreement under Section 11.3 of the Credit Agreement, among other things, to pay or reimburse the Administrative Agent, any Lender or the Issuing Lender on demand for all out-of-pocket expenses incurred by the Administrative Agent, any Lender or the Issuing Lender (including the fees, charges and disbursements of counsel, collateral audits, financial advisors, appraisals, environmental assessments or other experts for the Administrative Agent, any Lender or the Issuing Lender), in connection with the preparation, negotiation, execution, delivery and administration of this Amendment and the other documents, agreements and certificates contemplated hereunder (whether or not the transactions contemplated hereby or thereby shall be consummated), in connection with any Debtor Relief Proceeding with respect to any Loan Party or in connection with the enforcement or protection of its rights.  Each Borrower hereby authorizes CoBank to make DIP Advances at any time and from time to time for immediate application to such payment or reimbursement of any such fees, costs or expenses under this Section 8(b), Section 11.3 of the Credit Agreement or any other provision of the Loan Documents.

(c)     <u>No Waiver</u>.  The execution of this Amendment or any documents, agreements and certificates contemplated hereunder shall not be deemed to be a waiver of any Default or Event of Default (including, without limitation, any Specified Default) or any other breach, default or event of default under any Loan Document or other document held by the Administrative Agent or any Lender, whether or not known to the Administrative Agent or any Lender and whether or not existing on the date of this Amendment.  All rights and remedies of the Administrative Agent and each Lender are and shall continue at all times to be expressly reserved by the Administrative Agent and the Lenders.

(d)     <u>Loan Document</u>.  The parties hereto hereby acknowledge and agree that this Amendment shall constitute a Loan Document for all purposes of the Credit Agreement and the other Loan Documents.  This Amendment, together with the Credit Agreement, the Forbearance Agreement as amended hereby and the other Loan Documents, comprise the final and complete integration of all prior expressions by the parties hereto with respect to the subject matter hereof and shall constitute the entire agreement among the parties hereto with respect to such subject matter, superseding all prior oral or written understandings.

(e)     <u>Successors and Assigns</u>.  This Amendment shall be binding upon and inure to the benefit of each of the parties hereto, and their respective successors and assigns, except that none of the Borrowers may assign or transfer its respective rights or obligations hereunder.

US.125513610.06

**EXHIBIT 1**
**Page 4 of 7**

(f)     Severability. Should any provision of this Amendment be deemed unlawful or unenforceable, said provision shall be deemed several and apart from all other provisions of this Amendment, and all remaining provisions of this Amendment shall be fully enforceable.

(g)     Governing Law. THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF COLORADO.

(h)     Headings.  The captions or headings in this Amendment are for convenience only and in no way define, limit or describe the scope or intent of any provision of this Amendment.

(i)     Counterparts.  This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts of this Amendment, taken together, shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page to this Amendment by facsimile or by e-mail transmission of a PDF or similar copy shall be equally as effective as delivery of a manually executed counterpart of this Amendment.  Any party delivering an executed counterpart signature page to this Amendment by facsimile or by e-mail transmission shall also deliver a manually executed counterpart of this Amendment but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability or binding effect of this Amendment.

*Signature pages follow.*

US.125513610.06

EXHIBIT 1
Page 5 of 7

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

**NORPAC FOODS, INC.**, as Borrower

By: _____
Name:   Shawn Campbell
Title:   President

**HERMISTON FOODS, LLC**, as Borrower

By: _____
Name:   Shawn Campbell
Title:   President

**QUINCY FOODS, LLC,** as Borrower

By: _____
Name:   Shawn Campbell
Title:   President

**COBANK, ACB,** as Administrative Agent and as
Lender

By: _____
Name:    Justin A. Barr
Title:    Vice President

# NORPAC Foods, Inc.

*Forbearance DIP Budget*

| ($s in 000s) | 0<br>Actual<br>11/8/19 | 1<br>Forecast<br>11/15/19 | 2<br>Forecast<br>11/22/19 | 2 Week<br>Total |
|---|---|---|---|---|
| **Sales** | $8,180 | $6,680 | $6,612 | $13,292 |
| **Receipts** | | | | |
| Accounts Receivable Collections | 6,649 | 6,500 | 6,500 | 13,000 |
| **Operating Disbursements** | | | | |
| Salaried Payroll and Related Taxes | – | 637 | 149 | 785 |
| Hourly & Seasonal Labor | 600 | 1,897 | 991 | 2,889 |
| Workers Compensation Payouts | 8 | 15 | 15 | 30 |
| Total Grower Payables | 147 | – | (23) | (23) |
| Payroll Related Insurance & Benefits | 55 | 1,000 | 20 | 1,020 |
| Ingredients | 460 | 500 | 1,500 | 2,000 |
| Broker | – | 226 | – | 226 |
| Utilities | 60 | 289 | 250 | 539 |
| Insurance | 7 | – | – | – |
| Freight | 727 | 750 | 750 | 1,500 |
| Storage | 101 | 659 | 1,200 | 1,859 |
| Packaging | 148 | 150 | 150 | 300 |
| Selling & Marketing | 4 | 12 | 35 | 47 |
| Other | 647 | 1,400 | 700 | 2,100 |
| **Total Operating Disbursements** | 2,964 | 7,535 | 5,737 | 13,273 |
| **Net Cash Flow from Operations** | 3,684 | (1,035) | 763 | (273) |
| **Non-Operating / Restructuring Disbursements** | | | | |
| Professional Fees | – | – | 1,864 | 1,864 |
| Other Legal/OCP | 2 | – | 48 | 48 |
| KCC | – | – | 270 | 270 |
| Bank Fees (including legal fees) | – | – | 400 | 400 |
| CoBank Loan Interest | 774 | – | – | – |
| **Net CF before Borrowing** | 2,907 | (1,035) | (1,818) | (2,854) |
| Starting Cash | 7,748 | 10,656 | 9,620 | 10,656 |
| Net Cash before Financing | 2,907 | (1,035) | (1,818) | (2,854) |
| Revolver Draw / (Repayment) | – | – | – | – |
| Ending Cash | 10,656 | 9,620 | 7,802 | 7,802 |
| Starting CoBank Balance | 130,177 | 130,177 | 130,177 | 130,177 |
| Draw / (Repayment) | – | – | – | – |
| Ending CoBank Balance | 130,177 | 130,177 | 130,177 | 130,177 |

**EXHIBIT 2**
**Page 1 of 2**

**NORPAC Foods, Inc.**

*Forbearance DIP Budget*
*Professional Fees*
*(Excludes Bank Counsel, UST, KCC and OCP)*

($s in 000s)

| | Retainer | Aug | Sep | Oct | Total Aug-Oct | 11/8 | 11/15 | 11/22 | Total Forbearance | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **INCURRED** | | | | | | | | | | |
| SCP [1] | | 85 | 375 | 440 | 900 | 90 | 90 | 90 | 270 | 1,170 |
| Tonkon Torp | | 61 | 210 | 262 | 532 | 25 | 25 | 25 | 75 | 607 |
| UCC | | – | – | 872 | 872 | 75 | 75 | 75 | 225 | 1,097 |
| **Total Incurred** | | **146** | **585** | **1,574** | **2,305** | **190** | **190** | **190** | **570** | **2,875** |
| | | | | | | | | | | |
| **PAID** | | | | | | | | | | |
| SCP [2] | 500 | – | – | – | – | – | – | 736 | 736 | 736 |
| Tonkon Torp [2] | 458 | – | – | – | – | – | – | 426 | 426 | 426 |
| UCC [2] | – | – | – | – | – | – | – | 701 | 701 | 701 |
| **Total Paid** | **958** | **–** | **–** | **–** | **–** | **–** | **–** | **1,864** | **1,864** | **1,864** |

*Note:*
*1. SCP fees would be reduced if due diligence for potential real estate buyers is minimal*
*2. 80% of billed hours, 100% of expenses*

**EXHIBIT 2**
**Page 2 of 2**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re

NORPAC Foods, Inc., Hermiston Foods,
LLC, and Quincy Foods, LLC,

            Debtors.

Case No. 19-62584-pcm11
**LEAD CASE**

(Jointly Administered with Case Nos.
19-33102-pcm11 and 19-33103-pcm11)

ORDER APPROVING FIRST AMENDMENT
TO FORBEARANCE AGREEMENT

        This matter came before the Court on the Motion to Approve First Amendment to

Forbearance Agreement (ECF ___, the "Motion") filed by CoBank, ACB ("CoBank"). Based

upon the arguments of counsel in the Motion and the record of this case, and good cause

appearing therefor,

        IT IS HEREBY ORDERED

        1.      The First Amendment to Forbearance Agreement is approved. A copy of

the First Amendment to Forbearance Agreement is attached to this Order as Exhibit 1. A copy of

the Budget referenced in the First Amendment to Forbearance Agreement is attached to this

Order as Exhibit 2.

**Page 1 of 2** -   Order Approving First Amendment to Forbearance Agreement

060870-0022/4835-4698-4621.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

**EXHIBIT 3**
**Page 1 of 11**

2.      The terms of the Final Order Granting Debtors' Motion for Authorization to Obtain Secured Credit (ECF 147) and the Amended Final Order Granting Debtors' Motion for Authorization to Obtain Secured Credit (Amended Only for the Purpose of Attaching Budget) (ECF 202; as amended, the "DIP Financing Order") remain in full force and effect with respect to the Debtors' use of cash collateral pursuant to the Forbearance Agreement. CoBank is provided with and retains all of the protections set forth in the DIP Financing Order for Debtor's use of cash collateral pursuant to the Forbearance Agreement, as amended, and any advances made by CoBank under the Forbearance Agreement, as amended, will be treated as Postpetition Indebtedness under the DIP Financing Order. For the avoidance of doubt, and without limitation, any advances made by CoBank under the Forbearance Agreement, as amended, will be entitled to the treatment and priority described in paragraph 8 of the DIP Financing Order. For the further avoidance of doubt, all of the rights and protections of other creditors under the DIP Financing Order are preserved.

3.      Nothing herein modifies the Stipulated Order re Limited Extension of Deadline for Challenges (ECF 254) , or the Stipulated Order re Further Limited Extension of Deadline for Challenges (ECF 401).

# # #


Presented by:

MILLER NASH GRAHAM & DUNN LLP

*/s/ Teresa H. Pearson*
Teresa H. Pearson, OSB No. 953750
teresa.pearson@millernash.com
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97204
Telephone: (503) 224-5858
Fax: (503) 224-0155

Attorneys for Creditor CoBank, ACB,
as Administrative Agent and Lender


**Page 2 of 2** - Order Approving First Amendment to Forbearance Agreement

060870-0022/4835-4698-4621.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

**EXHIBIT 3**
**Page 2 of 11**

Case 19-62584-pcm11    Doc 415    Filed 11/18/19

# FIRST AMENDMENT TO FORBEARANCE AGREEMENT

This Amendment is entered into as of November *[__]*, 2019 by and among NORPAC Foods, Inc., an Oregon cooperative corporation ("NORPAC"), Hermiston Foods, LLC, an Oregon limited liability company ("Hermiston"), and Quincy Foods, LLC, a Washington limited liability company ("Quincy"; together with NORPAC and Hermiston, the "Borrowers"), the Lenders (as defined in the Credit Agreement described below) signatory hereto, and CoBank, ACB, a federally chartered instrumentality of the United States, as administrative agent (in such capacity, the "Administrative Agent") under the Credit Agreement described below.

The Borrowers, the Lenders and the Administrative Agent are parties to (i) a Credit Agreement dated as of November 15, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") and (ii) a Forbearance Agreement dated as of November 7, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Forbearance Agreement").

The Borrowers have requested that the Administrative Agent and the Lenders amend the Forbearance Agreement to, among other things, extend the Forbearance Period (as defined in the Forbearance Agreement) for a limited period of time. The Administrative Agent and the Lenders are willing to grant the Borrowers' request on the terms and subject to the conditions set forth herein.

ACCORDINGLY, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.      **Definitions**.  As used herein, capitalized terms used in this Amendment but not otherwise defined herein shall have the meanings assigned to them in the Credit Agreement or the Forbearance Agreement, as applicable.

2.      **Amendments to the Forbearance Agreement**.  Section 1 of the Forbearance Agreement is amended by amending and restating the following definitions to read as follows:

"'Forbearance Termination Event' means the occurrence of any of the following:

(a)      the occurrence of the Stated Forbearance Termination Date; or

(b)      the occurrence of any of the following, but only if the Administrative Agent, in its sole discretion, has designated such occurrence as a Forbearance Termination Event effective as of the date specified in such notice:

(i)      any Default or Event of Default under any Loan Document (other than the Specified Defaults); or

(ii)      the Administrative Agent or any Lender becomes aware of or determines that any Default or Event of Default (other than the Specified Defaults) had occurred and was continuing under any Loan Document as of the date of this Agreement;

(iii)      any Borrower or any other Loan Party fails to comply in any respect with any term, condition or provision of this Agreement; or

US.125513610.06

**EXHIBIT 1**
**Page 1 of 7**

**EXHIBIT 3**
**Page 3 of 11**

Case 19-62584-pcm11      Doc 415      Filed 11/18/19

(iv)     Oregon Potato Company ("<u>OPC</u>") withdraws from the Asset Purchase Agreement dated November 15, 2019 among the Borrowers and OPC, or OPC otherwise notifies any Borrower that OPC does not intend to proceed with the transactions contemplated thereunder."

"'<u>Stated Forbearance Termination Date</u>' means November 25, 2019 or such later date as the Administrative Agent may agree in its sole discretion."

3.     **Consent to Use of Cash Collateral**. Without limiting any other provision of the Forbearance Agreement or the Credit Agreement, the Administrative Agent hereby consents to the Borrowers' Use of Cash Collateral during the Forbearance Period (as extended by this Amendment), provided that (i) as of any week, the Borrowers' Use of Cash Collateral shall not exceed the aggregate amount of operating and non-operating disbursements permitted for such week as set forth in the Budget and (ii) no Forbearance Termination Event has occurred. Any Use of Cash Collateral shall be subject to the terms and conditions of the Credit Agreement, including, without limitation, that (x) any Use of Cash Collateral shall constitute a DIP Advance and Post-Petition Indebtedness entitled to super-priority administrative expense status and secured by the Post-Petition Collateral and (y) any Use of Cash Collateral shall be treated, for accounting purposes, as a simultaneous reduction of Pre-Petition Indebtedness and an increase in Post-Petition Indebtedness, in each case by the amount of such Use of Cash Collateral.

4.     **References**. All references in the Forbearance Agreement to "this Agreement" shall be deemed to refer to the Forbearance Agreement as amended hereby, and any and all references in any other Loan Documents to the Forbearance Agreement shall be deemed to refer to the Forbearance Agreement as amended hereby.

5.     **No Other Changes**. Except as amended by this Amendment, all terms of the Forbearance Agreement and the other Loan Documents remain in full force and effect.

6.     **Representations and Warranties**. Each Borrower hereby represents and warrants to the Administrative Agent and each Lender as follows:

(a)     Subject to approval by the Bankruptcy Court, each Borrower has all requisite power and authority, corporate or otherwise, to execute and deliver this Amendment and any other documents delivered hereunder and to perform its obligations under this Amendment, the Credit Agreement, the Forbearance Agreement as amended hereby and the other Loan Documents. This Amendment and the other Loan Documents have been duly and validly executed and delivered to the Administrative Agent by the Borrowers, and this Amendment, the Credit Agreement, the Forbearance Agreement as amended hereby and the other Loan Documents constitute the Borrowers' legal, valid and binding obligations, enforceable in accordance with their terms.

(b)     The execution, delivery and performance by each Borrower of this Amendment, and the performance of the Credit Agreement, the Forbearance Agreement as amended hereby and the other Loan Documents to which such Borrower is a party, have been duly authorized by all necessary corporate or other action of such Borrower and do not and will not (i) require any authorization, consent or approval by any Governmental Authority, (ii) violate such Borrower's Organizational Documents or any provision of any law, rule, regulation or order presently in effect having applicability to such Borrower, (iii) result in a breach of, or constitute a default under, any indenture or agreement to which such Borrower is a party or by which such Borrower or its properties may be bound or affected, or (iv) result in, or require, the creation or imposition of any Lien of any nature upon or with respect to any of the properties now owned or hereafter acquired

US.125513610.06

EXHIBIT 1
Page 2 of 7
EXHIBIT 3
Page 4 of 11

by any Borrower (other than as required under the Loan Documents or as otherwise permitted by the Loan Documents).

(c)     (i) The representations and warranties of each Borrower in the Loan Documents which are not otherwise qualified by materiality shall be true, correct and complete in all material respects on and as of the date hereof as though made on and as of such date, except to the extent that such representations and warranties relate solely to an earlier date, in which case such representations and warranties shall be true, correct and complete in all material respects as of the applicable earlier date(s); and (ii) the representations and warranties of each Borrower in the Loan Documents which are qualified by materiality shall be true, correct and complete in all respects on and as of the date hereof as though made on and as of such date, except to the extent that such representations and warranties relate solely to an earlier date, in which case such representations and warranties shall be true, correct and complete in all respects as of the applicable earlier date(s).

(d)     Other than the Specified Defaults, no event has occurred and is continuing, or would result from the execution and delivery of this Amendment, which constitutes a Default, Event of Default or any other breach or default under the Loan Documents.

7.     **Conditions to Effectiveness**.  Sections 2 and 3 of this Amendment shall be effective only if the Administrative Agent has received, on or before the date of this Amendment (or such later date as the Administrative Agent may agree in writing), or waived in its sole discretion, each of the following, each in form and substance acceptable to the Administrative Agent in its sole discretion:

(a)     this Amendment, duly executed by an Authorized Officer of each Borrower and an officer of each Lender;

(b)     evidence of entry by the Bankruptcy Court of an order that approves this Amendment and the Forbearance Agreement as amended hereby and authorizes the Borrowers to enter into this Amendment and the transactions contemplated herein, in form and substance satisfactory to the Administrative Agent in its sole discretion;

(c)     evidence of entry by the Bankruptcy Court of an order granting the Administrative Agent and the Lenders relief from the automatic stay, in form and substance satisfactory to the Administrative Agent in its sole discretion;

(d)     an asset purchase agreement with respect to the sale of certain assets of the Borrowers, duly executed by an Authorized Officer of each Borrower and an officer of the applicable buyer, in form and substance satisfactory to the Administrative Agent in its sole discretion;

(e)     an updated liquidation plan of the Borrowers, as certified by the CRO, in form, detail and substance acceptable to the Administrative Agent in its sole discretion;

(f)     an updated Budget, in form, detail and substance acceptable to the Administrative Agent in its sole discretion;

(g)     payment of all fees and expenses of the Administrative Agent (including the fees and expenses of the Administrative Agent and its counsel, advisors and consultants) to the extent invoiced prior to the date hereof; and

EXHIBIT 1
Page 3 of 7
EXHIBIT 3
Page 5 of 11

(h)    such other assurances, certificates, documents, consents, reports or opinions as the Administrative Agent may require.

8.    **General Provisions**.

(a)    <u>Release</u>. Each Borrower hereby absolutely and unconditionally releases and forever discharges each of the Administrative Agent and Lenders, and any and all of their respective participants, parent corporations, subsidiary corporations, affiliated corporations, insurers, indemnitors, successors and assigns, together with all of the present and former Directors, officers and employees, agents, attorneys and consultants of any of the foregoing, from any and all claims, demands or causes of action of any kind, nature or description, whether arising in law or equity or upon contract or tort or under any state or federal law or otherwise, which such Borrower has had, now has or has made claim to have against any such Person for or by reason of any act, omission, matter, cause or thing whatsoever occurring or arising from the beginning of time to and including the date of this Amendment, whether such claims, demands and causes of action are matured or unmatured or known or unknown.

(b)    <u>Costs and Expenses</u>. Each Borrower hereby reaffirms its agreement under Section 11.3 of the Credit Agreement, among other things, to pay or reimburse the Administrative Agent, any Lender or the Issuing Lender on demand for all out-of-pocket expenses incurred by the Administrative Agent, any Lender or the Issuing Lender (including the fees, charges and disbursements of counsel, collateral audits, financial advisors, appraisals, environmental assessments or other experts for the Administrative Agent, any Lender or the Issuing Lender), in connection with the preparation, negotiation, execution, delivery and administration of this Amendment and the other documents, agreements and certificates contemplated hereunder (whether or not the transactions contemplated hereby or thereby shall be consummated), in connection with any Debtor Relief Proceeding with respect to any Loan Party or in connection with the enforcement or protection of its rights. Each Borrower hereby authorizes CoBank to make DIP Advances at any time and from time to time for immediate application to such payment or reimbursement of any such fees, costs or expenses under this Section 8(b), Section 11.3 of the Credit Agreement or any other provision of the Loan Documents.

(c)    <u>No Waiver</u>. The execution of this Amendment or any documents, agreements and certificates contemplated hereunder shall not be deemed to be a waiver of any Default or Event of Default (including, without limitation, any Specified Default) or any other breach, default or event of default under any Loan Document or other document held by the Administrative Agent or any Lender, whether or not known to the Administrative Agent or any Lender and whether or not existing on the date of this Amendment. All rights and remedies of the Administrative Agent and each Lender are and shall continue at all times to be expressly reserved by the Administrative Agent and the Lenders.

(d)    <u>Loan Document</u>. The parties hereto hereby acknowledge and agree that this Amendment shall constitute a Loan Document for all purposes of the Credit Agreement and the other Loan Documents. This Amendment, together with the Credit Agreement, the Forbearance Agreement as amended hereby and the other Loan Documents, comprise the final and complete integration of all prior expressions by the parties hereto with respect to the subject matter hereof and shall constitute the entire agreement among the parties hereto with respect to such subject matter, superseding all prior oral or written understandings.

(e)    <u>Successors and Assigns</u>. This Amendment shall be binding upon and inure to the benefit of each of the parties hereto, and their respective successors and assigns, except that none of the Borrowers may assign or transfer its respective rights or obligations hereunder.

4

US.125513610.06

EXHIBIT 1
Page 4 of 7
EXHIBIT 3
Page 6 of 11

Case 19-62584-pcm11    Doc 415    Filed 11/18/19

(f)    <u>Severability</u>. Should any provision of this Amendment be deemed unlawful or unenforceable, said provision shall be deemed several and apart from all other provisions of this Amendment, and all remaining provisions of this Amendment shall be fully enforceable.

(g)    <u>Governing Law</u>. THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF COLORADO.

(h)    <u>Headings</u>. The captions or headings in this Amendment are for convenience only and in no way define, limit or describe the scope or intent of any provision of this Amendment.

(i)    <u>Counterparts</u>. This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts of this Amendment, taken together, shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page to this Amendment by facsimile or by e-mail transmission of a PDF or similar copy shall be equally as effective as delivery of a manually executed counterpart of this Amendment. Any party delivering an executed counterpart signature page to this Amendment by facsimile or by e-mail transmission shall also deliver a manually executed counterpart of this Amendment but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability or binding effect of this Amendment.

*Signature pages follow.*

US.125513610.06

**EXHIBIT 1**
**Page 5 of 7**
**EXHIBIT 3**
**Page 7 of 11**

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

**NORPAC FOODS, INC.**, as Borrower

By: _____
Name:    Shawn Campbell
Title:    President

**HERMISTON FOODS, LLC**, as Borrower

By: _____
Name:    Shawn Campbell
Title:    President

**QUINCY FOODS, LLC,** as Borrower

By: _____
Name:    Shawn Campbell
Title:    President

*Signature Page to First Amendment to Forbearance Agreement*

**EXHIBIT 1**
**Page 6 of 7**
**EXHIBIT 3**
**Page 8 of 11**

Case 19-62584-pcm11    Doc 415    Filed 11/18/19

**COBANK, ACB,** as Administrative Agent and as
Lender

By: _____
Name:   Justin A. Barr
Title:    Vice President

*Signature Page to First Amendment to Forbearance Agreement*

**EXHIBIT 1**
**Page 7 of 7**

**EXHIBIT 3**
**Page 9 of 11**

# NORPAC Foods, Inc.
*Forbearance DIP Budget*

| ($s in 000s) | 0<br>Actual<br>11/8/19 | 1<br>Forecast<br>11/15/19 | 2<br>Forecast<br>11/22/19 | 2 Week<br>Total |
|---|---|---|---|---|
| **Sales** | $8,180 | $6,680 | $6,612 | $13,292 |
| **Receipts** | | | | |
| Accounts Receivable Collections | 6,649 | 6,500 | 6,500 | 13,000 |
| **Operating Disbursements** | | | | |
| Salaried Payroll and Related Taxes | – | 637 | 149 | 785 |
| Hourly & Seasonal Labor | 600 | 1,897 | 991 | 2,889 |
| Workers Compensation Payouts | 8 | 15 | 15 | 30 |
| Total Grower Payables | 147 | – | (23) | (23) |
| Payroll Related Insurance & Benefits | 55 | 1,000 | 20 | 1,020 |
| Ingredients | 460 | 500 | 1,500 | 2,000 |
| Broker | – | 226 | – | 226 |
| Utilities | 60 | 289 | 250 | 539 |
| Insurance | 7 | – | – | – |
| Freight | 727 | 750 | 750 | 1,500 |
| Storage | 101 | 659 | 1,200 | 1,859 |
| Packaging | 148 | 150 | 150 | 300 |
| Selling & Marketing | 4 | 12 | 35 | 47 |
| Other | 647 | 1,400 | 700 | 2,100 |
| **Total Operating Disbursements** | 2,964 | 7,535 | 5,737 | 13,273 |
| **Net Cash Flow from Operations** | 3,684 | (1,035) | 763 | (273) |
| **Non-Operating / Restructuring Disbursements** | | | | |
| Professional Fees | – | – | 1,864 | 1,864 |
| Other Legal/OCP | 2 | – | 48 | 48 |
| KCC | – | – | 270 | 270 |
| Bank Fees (including legal fees) | – | – | 400 | 400 |
| CoBank Loan Interest | 774 | – | – | – |
| **Net CF before Borrowing** | 2,907 | (1,035) | (1,818) | (2,854) |
| Starting Cash | 7,748 | 10,656 | 9,620 | 10,656 |
| Net Cash before Financing | 2,907 | (1,035) | (1,818) | (2,854) |
| Revolver Draw / (Repayment) | – | – | – | – |
| Ending Cash | 10,656 | 9,620 | 7,802 | 7,802 |
| Starting CoBank Balance | 130,177 | 130,177 | 130,177 | 130,177 |
| Draw / (Repayment) | – | – | – | – |
| Ending CoBank Balance | 130,177 | 130,177 | 130,177 | 130,177 |

**EXHIBIT 2**
**Page 1 of 2**
**EXHIBIT 3**
**Page 10 of 11**

**NORPAC Foods, Inc.**

*Forbearance DIP Budget*
*Professional Fees*
*(Excludes Bank Counsel, UST, KCC and OCP)*

| ($s in 000s) | Retainer | Aug | Sep | Oct | Total Aug-Oct | 11/8 | 11/15 | 11/22 | Total Forbearance | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **INCURRED** | | | | | | | | | | |
| SCP [1] | | 85 | 375 | 440 | 900 | 90 | 90 | 90 | 270 | 1,170 |
| Tonkon Torp | | 61 | 210 | 262 | 532 | 25 | 25 | 25 | 75 | 607 |
| UCC | | – | – | 872 | 872 | 75 | 75 | 75 | 225 | 1,097 |
| **Total Incurred** | | **146** | **585** | **1,574** | **2,305** | **190** | **190** | **190** | **570** | **2,875** |
| **PAID** | | | | | | | | | | |
| SCP [2] | 500 | – | – | – | – | – | – | 736 | 736 | 736 |
| Tonkon Torp [2] | 458 | – | – | – | – | – | – | 426 | 426 | 426 |
| UCC [2] | – | – | – | – | – | – | – | 701 | 701 | 701 |
| **Total Paid** | **958** | **–** | **–** | **–** | **–** | **–** | **–** | **1,864** | **1,864** | **1,864** |

*Note:*
*1. SCP fees would be reduced if due diligence for potential real estate buyers is minimal*
*2. 80% of billed hours, 100% of expenses*

EXHIBIT 2

Page 2 of 2

EXHIBIT 3

Page 11 of 11

Case 19-62584-pcm11     Doc 415     Filed 11/18/19

I hereby certify that I served the foregoing Motion to Approve First Amendment

to Forbearance Agreement on:

- STEPHEN P ARNOT    steve.arnot@usdoj.gov
- Stephen P. Arnot    steve.arnot@usdoj.gov, Amy.Schaffer@usdoj.gov
- NOAH T BARISH    nbarish@mbjlaw.com
- TYLER BELLIS    tylerb@mcewengisvold.com,
  nancyn@mcewengisvold.com;docketing@mcewengisvold.com
- SCOTT BLAKELEY    seb@blakeleyllp.com
- CASSANDRA CAVERLY    burton.cassandra@pbgc.gov, efile@pbgc.gov
- MARK B COMSTOCK    mcomstock@ghrlawyers.com, tbrinlee@ghrlawyers.com
- DAVID H. CONAWAY    dconaway@shumaker.com,
  rbruckmann@shumaker.com;celgin@shumaker.com
- TIMOTHY J CONWAY    tim.conway@tonkon.com,
  candace.duncan@tonkon.com;spencer.fisher@tonkon.com;leslie.hurd@tonkon.com
- BRADLEY S COPELAND    bcopeland@arnoldgallagher.com,
  bdavis@arnoldgallagher.com
- MICHAEL G COWGILL    mcowgill@wtlegal.com, kmcgie@wtlegal.com
- CONDE T COX    conde@lawofficeofcondecox.com, trish@lawofficeofcondecox.com
- DAVID W CRISWELL    criswelld@lanepowell.com, docketing-
  PDX@Lanepowell.com;holleym@lanepowell.com
- MICHAEL W FLETCHER    michael.fletcher@tonkon.com,
  leslie.hurd@tonkon.com;spencer.fisher@tonkon.com
- SUSAN S FORD    susanf@sussmanshank.com,
  jhume@sussmanshank.com,ecf.susan.ford@sussmanshank.com;susan-ford-
  1058@ecf.pacerpro.com
- OREN B HAKER    oren.haker@stoel.com,
  docketclerk@stoel.com;kevin.mckenzie@stoel.com
- KRISTEN GRACE HILTON    khilton@sussmanshank.com,
  jbolstad@sussmanshank.com
- CALEB T. HOLZAEPFEL    caleb.holzaepfel@huschblackwell.com,
  LegalSupportTeam-Lookout-CHT@huschblackwell.com;caleb-holzaepfel-
  9767@ecf.pacerpro.com
- SCOTT L JENSEN    sjensen@brownsteinrask.com, tclay@brownsteinrask.com
- ALBERT N KENNEDY    al.kennedy@tonkon.com,
  leslie.hurd@tonkon.com;spencer.fisher@tonkon.com
- DANIEL KUBITZ    daniel.kubitz@stoel.com
- Kurtzman Carson Consultants LLC    ECFPleadings@kccllc.com
- LINDA J LARKIN    larkinl@bennetthartman.com, mathisa@bennetthartman.com
- JAMES K MIERSMA    bknotice@mccarthyholthus.com,
  vmcelligott@mccarthyholthus.com;jmiersma@ecf.courtdrive.com
- JEFFREY C MISLEY    jmisley@sussmanshank.com,
  jhume@sussmanshank.com,ecf.jeffrey.misley@sussmanshank.com

Page 1 -   Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- DOUGLAS R PAHL     dpahl@perkinscoie.com,
  nlesage@perkinscoie.com;docketpor@perkinscoie.com
- TERESA H PEARSON     teresa.pearson@millernash.com, MNGD-
  2823@millernash.com
- DAMON J PETTICORD     damon@apantac.com
- LOREN PODWILL     loren.podwill@bullivant.com,
  mary.brown@bullivant.com;alexander.hill@bullivant.com
- ALEX I POUST     apoust@schwabe.com, docket@schwabe.com;gvance@schwabe.com
- REBECCA E RUSSELL     rebecca@connollypc.com
- TARA J SCHLEICHER     tara.schleicher@foster.com, kesarah.rhine@foster.com
- AVA L SCHOEN     ava.schoen@tonkon.com, leslie.hurd@tonkon.com
- ALAN D SMITH     adsmith@perkinscoie.com
- TIMOTHY A SOLOMON     tsolomon@llg-llc.com, justin-leonard-leonard-law-group-
  llc-5265@ecf.pacerpro.com
- THOMAS W STILLEY     tom@sussmanshank.com,
  jhume@sussmanshank.com,ecf.thomas.stilley@sussmanshank.com;thomas-stilley-
  7866@ecf.pacerpro.com
- TOBIAS TINGLEAF     toby@shermlaw.com, darlene@shermlaw.com
- MARSHALL C TURNER     marshall.turner@huschblackwell.com
- US Trustee, Eugene     USTPRegion18.EG.ECF@usdoj.gov
- JOSEPH M VANLEUVEN     joevanleuven@dwt.com,
  kathrynferdinand@dwt.com;pdxdocket@dwt.com
- CAROLYN G WADE     carolyn.g.wade@doj.state.or.us
- HELEN E WELLER     dallas.bankruptcy@publicans.com
- WILLIAM RANDELL WILDER     wwilder@bapwild.com

by transmitting full, true, and correct copies thereof to those attorneys or parties through the

court's **Cm/ECF system** on the date set forth below, and on:

Alvarez & Marsal North America, LLC
425 Market St
San Francisco, CA 94105

Mohawk Northern Plastics, LLC dba Ampac
701 A. Street NE
Auburn, WA 98002

RONALD DAVID PAUL BRUCKMANN
Shumaker, Loop & Kendrick, LLP
101 S Tryon St #2200
Charlotte, NC 28280

BRUCE S NATHAN
1251 Avenue of the Americas
New York, NY 10020

JEFFREY D. PROL
Lowenstein Sandler LLP
One Lowenstein Dr
Roseland, NJ 07068

SCOTT CARGILL
Lowenstein Sandler LLP
One Lowenstein Dr
Roseland, NJ 07068

Packaging Corporation of America
1 N. Field Court
Lake Forest, IL 60045

Page 2 -   Certificate of Service

4812-4778-5133.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 19-62584-pcm11    Doc 415    Filed 11/18/19

KATE ELLIS
McCarron & Diess
4530 Wisconsin Ave NW #301
Washington, DC 20016

BRYAN T. GLOVER
Stoel Rives LLP
600 University St #3600
Seattle, WA 98101

HM Clause, Inc.
26 Cousteau Place, Ste. 210
Davis, CA 95618

International Paper Co.
6400 Poplar Ave.
Memphis, TN 38197

CHRISTOPHER M. KIERNAN
Blakeley LLP
18500 Von Karman Ave #530
Irvine, CA 92612

Kurtzman Carson Consultants LLC
222 N Pacific Coast Hwy 3rd Fl
El Segundo, CA 90245

BARRETT MARUM
379 Lytton Ave
Palo Alto, CA 94301-1479

Pension Benefit Guaranty Corp
1200 K. Street, NW
Washington, DC 20005

DENNIS M RYAN
2200 Wells Fargo Center
90 S Seventh St
Minneapolis, MN 55402-3901

MICHAEL R. STEWART
2200 Wells Fargo Ctr
90 S. Seventh St
Minneapolis, MN 55402-3901

SierraConstellation Partners LLC
400 S Hope St #1050
Los Angeles, CA 90071

George Smith
9601 Oakmont Lane
Stayton, OR 97383

Syngenta Seeds, LLC
PO Box 18300
Greensboro, NC 27419

by **mailing** full, true, and correct copies thereof in sealed, first-class postage-prepaid envelopes, addressed to the attorneys or parties as shown above, the last-known office addresses of the attorneys, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

DATED this 18th day of November, 2019.

_/s/ Teresa H. Pearson_
Teresa H. Pearson, OSB No. 953750
Of Attorneys for Creditor CoBank, ACB, as
Administrative Agent and Lender

Page 3 -   Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

4812-4778-5133.1

Case 19-62584-pcm11    Doc 415    Filed 11/18/19