Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: <br><br> NORTH PACIFIC CANNERS & PACKERS INC., HERMISTON FOODS, LLC, AND NPCP QUINCY, LLC, <br><br> Debtors. | Bankruptcy Case No. 19-62584-pcm11 **LEAD CASE** <br><br> (Jointly Administered with Case Nos. 19-33102-pcm11 and 19-33103-pcm11) <br><br> MEMORANDUM OPINION[1] |

This case involves a dispute over whether a portion of a claim for electricity provided prepetition to the debtor in this chapter 11[2] case is entitled to priority treatment or, instead, should be allowed as a

---

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases. It may, however, be cited for whatever persuasive value it may have.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Page 1 – MEMORANDUM OPINION

general unsecured claim.  For the reasons stated below, the court concludes that the claim is not entitled to priority treatment under the Bankruptcy Code.

PROCEDURAL BACKGROUND AND FACTS[3]

Debtor North Pacific Canners & Packers, Inc. (Debtor) filed a chapter 11 petition on August 22, 2019.  PacifiCorp is a public utility company that supplied electricity to Debtor prepetition.  Stipulated Facts, ¶ 1.  Debtor had two accounts with PacifiCorp and was supplied with electricity by PacifiCorp at multiple locations.  Stipulated Facts, ¶ 7, 8.  A total of seven meters were used in connection with PacifiCorp's supply of electricity to Debtor.  Id. at ¶ 8.

PacifiCorp filed an unsecured proof of claim (the Claim) in the total amount of $502,230.73 for electricity provided to Debtor prepetition.  PacifiCorp asserts in the Claim that $206,009.81 of the total claim amount is entitled to priority treatment under § 507(a)(2), which provides that an administrative expense claim allowed under § 503(b) is entitled to priority treatment.  Specifically, PacifiCorp asserts that $206,009.81 of the Claim arises under § 503(b)(9), which allows as an administrative expense, claims for the value of any goods

---

[3]  The facts stated below are taken from the record in the above captioned case, evidence supplied in connection with this contested matter, and the stipulated facts (Stipulated Facts) submitted by the parties.  Doc. 1143.

Page 2 – MEMORANDUM OPINION

received by a debtor within 20 days before the petition date if the goods were sold to the debtor in the ordinary course of the debtor's business.[4]

Debtor filed an objection to the Claim, Doc. 954, arguing that the Claim is not entitled to priority treatment because electricity is not "goods" within the meaning of § 503(b)(9). As a result, Debtor moved that the Claim be reclassified and allowed as a nonpriority, general unsecured claim in the amount of $502,230.73. Doc. 954.

After additional briefing, see Docs. 992 and 1021, the court entered a scheduling order (the Scheduling Order), the terms of which were agreed to by the parties, and set a January 27, 2021, evidentiary hearing. Doc. 1053. The parties agreed that expert and fact witnesses would provide direct testimony via declarations that were filed on the docket, so long as each witness was available to be cross-examined at the evidentiary hearing.[5]

As contemplated in the Scheduling Order, the parties exchanged and submitted to the court witness testimony in advance of the evidentiary hearing, including testimony in the form of written reports from two experts in the field of physics. PacifiCorp filed an Initial Expert

---

[4]   For reasons that are not material to this dispute, PacifiCorp reduced the amount of the Claim for which it was seeking priority treatment by $3,072.55 at the beginning of the evidentiary hearing.

[5]   Both parties ultimately declined to conduct cross-examinations.

Page 3 – MEMORANDUM OPINION

Witness Report of Shawn J. Kolitch (the Kolitch Report), Exhibit E, and Debtor filed an Expert Report of Howard A. Scott (the Scott Report). Exhibit 14. PacifiCorp also filed an Expert Witness Rebuttal Report of Shawn J. Kolitch (the Kolitch Rebuttal Report). Exhibit F. The parties stipulated, and the court agrees, that Kolitch and Scott both qualify as experts in the field of physics. Doc. 1166, ¶ 5.

The court held an evidentiary hearing as scheduled on January 27, 2021. PacifiCorp stipulated to the admission of the Scott Report. Doc. 1166, ¶ 1. Debtor, however, filed three motions in limine, Doc. 1152, objecting to the admission of the Kolitch Report and the Kolitch Rebuttal Report (collectively, the Kolitch Reports).[6] For the reasons stated on the record at the beginning of the evidentiary hearing, the court denied Debtor's second and third motions in limine. However, the court concluded that Debtor's first motion in limine was well-taken.

In its first motion in limine, Debtor argued, and the court agreed, that the Kolitch Reports include multiple improper statements of Kolitch's legal opinion that electricity does, in fact, qualify as goods within the meaning of § 503(b)(9). Kolitch is a licensed attorney, in addition to having a Ph.D. in physics, but PacifiCorp did not offer Kolitch as a legal expert, and an expert witness cannot give an opinion

---

[6] PacifiCorp also filed motions in limine, Doc. 1154, but the parties resolved PacifiCorp's motions before the evidentiary hearing. See Doc. 1166, ¶ 4.

Page 4 – MEMORANDUM OPINION

on an ultimate issue of law in a case.  United States v. Diaz, 876 F.3d. 1194, 1197 (9th Cir. 2017).  "This prohibition of opinion testimony on an ultimate issue of law recognizes that, '[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'"  Id. (quoting United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)).  The court admitted the Kolitch Reports into evidence, but with the proviso that it would not consider the improper statements as argument or evidence in the case.[7]

ANALYSIS

The Bankruptcy Code specifies the order in which a debtor's unsecured creditors will receive distributions from the bankruptcy estate, affording a second priority status to "administrative expenses allowed under section 503(b)."  § 507(a)(2).  Section 503(b) provides, in pertinent part:

> After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title [relating to involuntary bankruptcy cases], including [for]—
>
> * * * * *
>
>> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this

---

[7] Debtor suggested limited admission as an alternative to redacting the offending passages of the Kolitch Reports.  See Doc. 1152, p. 4 n. 1.

Page 5 – MEMORANDUM OPINION

>     title in which the goods have been sold to the debtor in the
>     ordinary course of such debtor's business.

§ 503(b)(9). A claimant bears the burden of proving entitlement to an administrative expense claim. In re BCE W., L.P., 319 F.3d 1166, 1172 (9th Cir. 2003). Further, § 507 priority is strictly construed. In re Lorber Indus. of California, 373 B.R. 663, 667-68 (9th Cir. BAP 2007), aff'd on other grounds, 564 F.3d 1098 (9th Cir. 2009). Because "the Bankruptcy Code aims, in the main, to secure equal distribution among creditors[,]" preferential treatment is appropriate only where Congress has clearly authorized it. Howard Delivery Serv. Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 655 (2006).

The parties agree that PacifiCorp supplied electricity to Debtor in the ordinary course of Debtor's business during the 20-day period preceding the petition date.[8] Stipulated Facts, ¶ 2. This case turns on the question of whether the electricity provided to Debtor by PacifiCorp qualifies as goods within the meaning of § 503(b)(9). For the reasons that follow, the court concludes that it does not.[9]

---

[8] Section 503(b)(9) directs that only the "value" of the goods received by a debtor is eligible for priority treatment. Debtor argued that even if electricity qualifies as goods, $206,009.81 does not represent the true value of the electricity sold to Debtor during the 20-day period preceding the petition date. Because the electricity sold to Debtor is not goods within the meaning of § 503(b)(9), the court need not address that argument.

[9] The court rejects Debtor's argument that the Claim is not entitled to priority treatment under § 503(b)(9) because PacifiCorp's own

Page 6 – MEMORANDUM OPINION

The Bankruptcy Code does not define the term "goods." It is widely accepted that the Uniform Commercial Code (the UCC) supplies the definition of goods for purposes of § 503(b)(9). In re PMC Mktg. Corp., 517 B.R. 386, 391-92 (BAP 1st Cir. 2014)(collecting cases). Moreover, because uniformity is important when interpreting federal statutory law, and because, unlike other provisions of the Bankruptcy Code, § 503(b)(9) does not expressly reference or incorporate applicable state law, the proper definition of goods for purposes of § 503(b)(9) is the one set forth in the model UCC. In re Pilgrim's Pride Corp., 421 B.R. 231, 236-37 (Bankr. N.D. Tex. 2009). As pertinent here, the model UCC defines "goods" to mean "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale[.]" U.C.C. § 2-105(1).

The parties and their respective expert witnesses agree on much.[10] There is no dispute that PacifiCorp supplied Debtor with alternating current (AC) electricity, which moves through conductive wires in

---

invoices and rate schedules reference "services" versus "goods." A court must disregard form over substance, and labels cannot change the true nature of a transaction. In re Woodson Co., 813 F.2d 266, 272 (9th Cir. 1987).

[10] Indeed, Kolitch states in the Rebuttal Report that "in my opinion we [Scott and I] both got our physics essentially right." Exhibit F, p. 1. Kolitch refers to the electricity supplied by PacifiCorp to Debtor as "electrical energy." Exhibit E, p. 1. Scott refers to "electricity waves." Exhibit 14, p. 5. The different nomenclature is not important in the context of this matter, and for simplicity sake, the court refers to "electricity."

Page 7 – MEMORANDUM OPINION

response to the demands of a customer's electric-powered devices. Exhibit E, p. 30; Exhibit 14, pp. 5, 10. The parties agree that meters measure and record the amount of electricity passing through the meter, and the amount a customer will be required to pay for that electricity. Exhibit F, p. 11; Exhibit 14, p. 6. Further, according to both parties, electricity moves at close to the speed of light. Exhibit E, p. 17; Exhibit 14, p. 10. The parties and their respective experts disagree, however, on a critical question: whether the electricity provided to Debtor was movable at the time it was identified to the contract of sale.

PacifiCorp's position is that the electricity a customer receives is identified to the contract at the instant it passes through a meter, and that the electricity is movable at that time. Debtor argues that electricity is not identified to the contract until the meter can register and display the usage. On this crucial question, the court agrees with Debtor. Electricity is identified to the contract when the meter through which it travels registers and displays the usage.

PacifiCorp did not present evidence on the exact types of electric meters it used to deliver electricity to Debtor. However, it is not necessary to identify the exact types of meters PacifiCorp used. Scott testified, without contradiction, that because electricity moves at almost the speed of light, all widely used forms of electric meters are

Page 8 – MEMORANDUM OPINION

incapable of registering and displaying the amount of electricity used before that electricity is consumed.

> Electricity travels near the speed of light, and electricity meters operate at a much slower speed than that. Therefore, though all widely used forms of electric meters do measure the amount of electricity that passed through them, they only do so *after* the electricity was consumed.

Exhibit 14, p. 6 (original emphasis). As Scott further explains, something cannot be moved, and thus is not movable, after it ceases to exist:

> Meters only monitor the electricity they see passing by, they do not store it or somehow set it aside. The meter takes what it has seen and processes this information with its internal circuits. This takes time, meanwhile the electricity is flowing beyond the meter at a speed of almost 186,000 miles per second. The processing time is immaterial because any amount of time is too much; the electricity wave is moving too fast. When the meter finally displays what it saw, it is reporting on something it saw in the past that is no longer there. For something to be movable, you must be able to identify it and have access to it, which is part of the process of moving it. Because the electricity has already passed by, it can no longer be accessed, so it cannot be moved, and is therefore not movable!

Exhibit 14, pp. 19-20 (emphasis removed).

PacifiCorp does not dispute Scott's testimony about the way meters work, it merely argues that identification occurs earlier, at the moment the electricity passes through a meter, a contention rejected by this court, as well as others. See In re Great Atl. & Pac. Tea Co., 538 B.R. 666, 672 (S.D.N.Y. 2015) (agreeing with the bankruptcy court that electricity is identified when it is measured and that measurement is registered and displayed by the meter, not at the instant the

Page 9 – MEMORANDUM OPINION

electricity passes through a meter); In re Pilgrim's Pride Corp., 421 B.R. at 239 ("Once electricity has been 'identified' by measurement at the meter, it has already been consumed by the end user.").

The court acknowledges that there is caselaw to support the proposition that electricity is identified at the moment it passes through a meter. See, e.g., In re Escalera Res. Co., 563 B.R. 336, 354 (Bankr. D. Colo. 2017)(discussing split among bankruptcy courts on the question of whether electricity constitutes goods). The court does not find those cases persuasive for two reasons.

First, the cases relied upon by PacifiCorp merely assume that electricity is identified to the contract the moment it passes through a meter, without analyzing what it means to identify goods to a contract in general, or ascribing any practical meaning to the concepts of identification and movability. To "identify" goods is to "specify (certain goods) as the object of a contract[.]" Black's Law Dictionary (11th ed. 2019). "'Identification of goods occurs when existing goods are designated, or agreed upon, as the goods to which the contract refers.'" In re Great Atl. & Pac. Tea Co., 538 B.R. at 672 (quoting In re Erving Indus., Inc., 432 B.R. 354, 370 (Bankr. D. Mass. 2010)). "Designate" means to choose something for a particular job or purpose. Black's Law Dictionary (11th ed. 2019). Something cannot be identified until it is capable of perception.

In this context, the electricity delivered must be capable of perception, that is, the meter must actually record and display the usage, before it is identified. PacifiCorp's position, that electricity is identified to the contract at the moment it passes through a meter, improperly equates "identifiable" with "identified." Although electricity may be "identifiable" once it passes through a meter, it takes a period of time for the meter to register and display the usage. Because electricity travels at close to the speed of light, it has been consumed, and thus is not movable, by the time it has been identified.

Second, none of the courts that decided the cases upon which PacifiCorp relies was presented with evidence of the type provided by Debtor in this case about the nature of electricity and how meters work. Both the trial and appellate courts that were presented with such evidence concluded that electricity is not movable at the time of identification to the contract, because it has already been consumed and no longer exists when it is identified. See In re Great Atl. & Pac. Tea Co., 538 B.R. at 673. In this context, identification is impossible until, at the earliest, the quantity of electricity delivered is registered and displayed on the meter. By that time, the electricity is no longer movable, because it has been consumed.[11]

---

[11] The court is assuming that the electricity provided by PacifiCorp to Debtor was identified to the contract when the meters registered and were capable of displaying the usage. Arguably, identification happened even later than that, when the meters were actually read. PacifiCorp's

Page 11 – MEMORANDUM OPINION

PacifiCorp argues that electricity qualifies as goods because there is a theoretical possibility that AC electricity can be stored in a manner similar to water and natural gas, without transformation to another form of energy. Kolitch testified:

> Specifically, the technique of superconductive magnetic energy storage ("SMES") can be used to store electrical energy as electric current moving in a coil of superconducting wire in a magnetic field. Basic information about this technique can be found, for example, at https://en.wikipedia.org/wiki/Superconducting_magnetic_ene rgy_storage, and a plethora of scientific papers and patents have been published on the subject. To reduce energy losses, SMES systems typically store electrical energy as direct (DC) current rather than as alternating (AC) current. However, this is a practical consideration rather than a requirement. In my opinion, there is no theoretical barrier to storing electrical energy temporarily as AC current in a coil of superconducting wire.

Exhibit F, p. 10. There are at least two problems with PacifiCorp's argument.

First, the analogy of electricity to natural gas and water is not apt or useful if for no other reason than that natural gas and water are designated as goods under an entirely separate section of the UCC – UCC § 2-107(1), which applies to contracts for the sale of "minerals or the like," expressly including oil and gas. In re Pilgrim's Pride Corp., 421 B.R. at 240-42. PacifiCorp does not argue, and it does not appear,

---

witness testified that meters are read monthly to calculate a customer's bills. Exhibit C, p. 7. According to Scott, "PacifiCorp is one of the few utilities in the U.S. and Canada to not remotely read their meters over a fixed smart network . . . . Instead, they rely on an older meter reading technology that requires a person to bring a data collector near the meter to get its data." Exhibit 14, p. 18.

Page 12 – MEMORANDUM OPINION

that electricity qualifies as goods under UCC § 2-107.  Second, although
Kolitch testified that it was theoretically possible to store AC
electricity in its native form, he admits that "storing electrical
energy in the form of AC current is not particularly practical, and is
therefore not (to my knowledge) commonly done."  Exhibit F, p. 10.
Accordingly, there is no suggestion, much less any evidence, that Debtor
stored the electricity it received from PacifiCorp in any fashion.
Instead, all indications are that Debtor consumed the electricity
supplied to it by PacifiCorp in the way consumers usually do -
immediately.

    For the reasons stated, the court concludes that merely passing
through a meter is not sufficient to identify electricity to a contract
within the meaning of the UCC and that the electricity provided to
Debtor by PacifiCorp was not movable at the time it was identified to
the contract.  However, even assuming electricity is identified to the
contract at the moment it passes through a meter, as PacifiCorp
contends, the court is inclined to believe that electricity still does
not qualify as goods because it is not movable at that time.  As the
Scott Report explains, electricity is not movable when it passes through
a meter because "it can only be consumed by the device that closed the
circuit" and caused the electricity to flow through the meter.  Exhibit
14, p. 23.  There is no dispute that electricity moves.  The fundamental
problem with PacifiCorp's argument is that PacifiCorp equates "moving"

Page 13 – MEMORANDUM OPINION

with "movable" and the two terms are not synonymous.  As Debtor points out in its brief:  The Earth moves and is moving.  So does the wind; as does the Empire state Building in a strong wind.  But the Earth and the wind are not "movable" because no one could conceivably move them.  Doc. 1144, p. 14 n. 11.

It is far from clear that the electricity supplied to Debtor by PacifiCorp qualifies as goods within the meaning of § 503(b)(9).  The Supreme Court has instructed that in such circumstances, "[a]ny doubt concerning the appropriate characterization" of a claim "is best resolved in accord with the Bankruptcy Code's equal distribution aim."  Howard Delivery Serv. Inc., 547 U.S. at 668.  In accordance with the Supreme Court's instruction, the Ninth Circuit Court of Appeals has observed that "the scope of priorities should be strictly construed because 'preferential treatment of a class of creditors is in order only when clearly authorized by Congress.'"  In re Consol. Freightways Corp. of Delaware, 564 F.3d 1161, 1167 n. 14 (9th Cir. 2009)(quoting Howard Delivery Serv. Inc., 547 U.S. at 655).  PacifiCorp has not met its burden to show that Congress clearly authorized that the Claim is entitled to priority treatment.

CONCLUSION

For the reasons stated above, the court concludes that the Claim is not entitled to priority treatment under § 503(b)(9). Debtor's counsel shall submit an order.

### ###